Misc. No. 2014 –

# In the
# United States Court of Appeals
## for the Federal Circuit

IN RE LG ELECTRONICS, INC., LG ELECTRONICS U.S.A., INC., and
LG ELECTRONICS MOBILECOMM USA INC.,

*Petitioners.*

On Petition for a Writ of Mandamus to the United States District Court
for the Eastern District of Texas, Case No. 2:13-cv-898.
The Honorable **Rodney Gilstrap**, Judge Presiding.

## PETITION FOR WRIT OF MANDAMUS
## FOR LG ELECTRONICS, INC.,
## LG ELECTRONICS U.S.A., INC., AND
## LG ELECTRONICS MOBILECOMM USA INC.

RICHARD D. HARRIS
JEFFREY G. MOTE
JAMES J. LUKAS, JR.
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 465-8400
Facsimile:  (312) 456-8435

*Attorneys for Petitioners*
*LG Electronics, Inc., LG Electronics U.S.A., Inc.,*
*and LG Electronics MobileComm USA Inc.*

Dated: August 21, 2014



# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4(a) and Federal Rule of Appellate Procedure 26.1, counsel for Petitioners LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics MobileComm USA Inc. ("LG") certifies the following:

1.     The full name of every party represented by the undersigned petitioners is:  LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics MobileComm USA Inc.

2.     No other real parties in interest are represented by the undersigned.

3.     LG Electronics U.S.A., Inc. is a wholly owned subsidiary of LG Electronics, Inc., a publicly held company in the Republic of Korea.  LG Corporation, a publicly held company in the Republic of Korea, owns more than 10% of LG Electronics, Inc.  LG Electronics MobileComm U.S.A., Inc. is a wholly owned subsidiary of LG Electronics U.S.A., Inc.

4.     The names of all law firms and the partners or associates that appeared for the party now represented by the undersigned in the trial court or agency, or are expected to appear in this Court, are:  Greenberg Traurig LLP: Richard D. Harris, Jeffrey G. Mote, and James J. Lukas, Jr.


DATED:  August 21, 2014               _____
                                       James J. Lukas, Jr.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTEREST ....................................................i

RELIEF SOUGHT ..........................................................1

ISSUES PRESENTED.......................................................1

SUMMARY OF ARGUMENT ...............................................2

STATEMENT OF RELEVANT FACTS .................................3

    A.    The Parties..........................................................3

        1.    Nortel, Rockstar, and MobileStar....................3

        2.    LG. .............................................................3

    B.    Rockstar Files Actions Against LG and Other Google Customers in Texas Based on Their Sale of Certain Mobile Devices Incorporating Google's Android OS—But Does Not Sue Google Itself..................................3

    C.    Google Files Suit in the Northern District of California to Protect Its Android OS Customers Including LG ......................4

    D.    Rockstar Moves to Dismiss or to Transfer Google's Action in the Northern District of California to the Eastern District of Texas............................................5

    E.    The Northern District of California Denies Rockstar's Motion to Dismiss or to Transfer and Issues Significant Holdings Highly Relevant To LG's Motion to Stay or Transfer. ....................................................6

        1.    Google's California Action, Not Rockstar's Texas Action Against Google's Customer Samsung in Texas, Was First-Filed...................................6

        2.    LG is a Customer of Google With Respect to the Accused Android OS Product, the Customer-Suit Exception Also Applies, and Because the Determination of Infringement Issues in Google's

California Action "Would Likely Be Dispositive" of the OEM Actions in Texas, the California Action Takes Precedence .................................................. 6

3.   Rockstar Is Based in Canada, Has No Essential Witnesses in Texas, and Its Related Entity, MobileStar, is a Sham Created to Dodge Jurisdiction .................................................. 7

4.   The Private and Public Convenience Factors under § 1404 Favor Maintaining the Google Action in California, Not Texas. ...................................... 8

F.   LG Moves to Stay or Transfer its Eastern District of Texas Action to the Northern District of California .................. 9

G.   The District Court Ignores the Northern District of California's Significant Holdings and Denies LG's Motion to Stay or Transfer ........................................ 10

STANDARDS OF REVIEW ................................................................ 10

REASONS WHY THE WRIT SHOULD ISSUE ................................ 11

I.   THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION BY NOT GIVING PRECEDENCE TO GOOGLE'S CALIFORNIA ACTION AND THE SIGNIFICANT HOLDINGS OF THE CALIFORNIA COURT. ...... 11

A.   The District Court Clearly Erred By Failing to Dismiss, Transfer, or Stay Rockstar's Second-Filed Action Against Google and By Basing Its Decision to Deny LG's Motion to Stay or Transfer on its Erroneous Denial of Google's Similar Motion to Stay or Transfer and Google's Continued Presence in the Texas Case. ................... 15

B.   The District Court Clearly Erred By Failing to Follow the California Court's Holdings that the Google California Action Would Likely Be Dispositive of the LG action, that the Customer-Suit Doctrine Also Applied, and that the District Court Transfer or Stay the LG Action. ................. 16

iii

II.    THE   DISTRICT   COURT   CLEARLY   ABUSED   ITS
       DISCRETION BY CONSIDERING THE OTHER ACTIONS
       BEFORE   IT,   ALSO   SUBJECT   TO   MOTIONS   TO
       TRANSFER, DEFEATING CONGRESS' PURPOSE IN THE
       AIA ........................................................................................18

III.   THE   DISTRICT   COURT   CLEARLY   ABUSED   ITS
       DISCRETION  IN  FINDING  TEXAS  TO  BE  THE  MOST
       CONVENIENT FORUM ..................................................21

       A.    The District Court Clearly Erred By Failing to Defer to
             The  California  Court's  Convenience  Factors  Holdings
             and By Failing to Analyze The Convenience Factors in
             View of the Presumptive California Forum............................21

       B.    The District Court Clearly Erred by Crediting Rockstar's
             Made-For-Litigation Office in Plano, Texas ...........................22

       C.    The  District  Court  Clearly  Abused  Its  Discretion  and
             Ignored  Precedent, Including Its Own, in Ruling on the §
             1404 Factors.............................................................................23

             1.    Cost of Attendance of Willing Witnesses ......................24

             2.    Local Interest .................................................................26

             3.    Compulsory Process .......................................................27

             4.    Ease of Access to Sources of Proof................................28

CONCLUSION ....................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Affinity Labs of Texas v. Samsung Elecs. Co.*,
  968 F. Supp. 2d 852 (E.D. Tex. 2013).........................................26, 27

*In re EMC Corp.*,
  501 F. App'x 973 (Fed. Cir. 2013) ................................................20

*Futurewei Techs., Inc. v. Acacia Research Corp.*,
  737 F.3d 704 (Fed. Cir. 2013) .................................................12, 13

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ...............................................22, 26

*GeoTag, Inc. v. Starbucks Corp.*,
  No. 10-572, 2013 WL 890484 (E.D. Tex. Jan. 14, 2013) ..................21

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) ...............................................26, 27

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
  802 F.2d 1367 (Fed. Cir. 1986) ....................................................15

*Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*,
  No. 10-216, 2012 WL 462956 (E.D. Tex. Feb. 13, 2012) .................23

*Mann Mfg., Inc. v. Hortex, Inc.*,
  439 F.2d 403 (5th Cir. 1971) .........................................................13

*Merial Ltd. v. Cipla Ltd.*,
  681 F.3d 1283 (Fed. Cir. 2012) ...............................................13, 14

*MHL Tek, LLC v. Nissan Motor Co.*,
  No. 07-289, 2009 WL 440627 (E.D. Tex. Feb. 23, 2009) ................19

*Micron Techs., Inc. v. Mosaid Techs., Inc.*,
  518 F.3d 897 (Fed. Cir. 2008) .............................................6, 21, 22

*In re Microsoft Corp.*,
    630 F.3d 1361 (Fed. Cir. 2011) ........................................................23

*Minn. Mining and Mfg. Co. v. Norton Co.*,
    929 F.2d 670 (Fed. Cir. 1991) ..........................................................10

*In re Nintendo of Am.*,
    No. 14-132, 2014 WL 2889911 (Fed. Cir. 2009) .........................17,18

*On Semiconductor Corp v. Hynix Semiconductor, Inc.*,
    No. 09-0390, 2010 WL 3855520 (E.D. Tex. Sep. 30, 2010) ......................28, 29

*Save Power Ltd. v. Synteck Fin. Corp.*,
    121 F.3d 947 (5th Cir. 1997) ........................................................13, 17

*Sawgrass Techs, Inc. v. Texas Original Graphics, Inc.*,
    Case No. 06-1190, 2007 U.S. App. Lexis 5084 (Fed. Cir. Mar. 2,
    2007) ........................................................................................13, 15

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011) ........................................................18

*Sutter Corp. v. P&P Indus., Inc.*,
    125 F.3d 914 (5th Cir. 1997) ........................................................14, 15

*In re TOA Techs, Inc.*,
    543 F. App'x 1006 (Fed. Cir. 2013) ......................................26, 27, 30

*Troy v. v. Samson Mfg. Corp.*,
    2013-1565, 2014 WL 3377125 (Fed. Cir. July 11, 2014) ..................27

*In re TS Tech. USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) ....................................................10, 11

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (en banc) .........................11, 26, 29, 30

*In re Volkswagen of Am., Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009) ........................................................20

*West Gulf Maritime Assoc. v. ILA Deep Sea Local 24*,
    751 F.2d 721 (5th Cir. 1985) ........................................................12, 13

*In re WMS Gaming*,
 No. 14-107, 2014 WL 1614530 (Fed. Cir. Apr. 23, 2014)................................11

*In re Zimmer Holdings, Inc.*,
 609 F.3d 1378 (Fed. Cir. 2010) ..........................................................................23

**Federal Statutes**

28 U.S.C. § 1404 .............................................................................................*passim*

35 U.S.C. § 299 ...........................................................................................................20

## RELIEF SOUGHT

LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics Mobilecomm USA Inc. (collectively "LG") respectfully petition for a writ of mandamus directing the United States District Court for the Eastern District of Texas ("EDTX" or "District Court") to vacate its order denying LG's motion to stay or transfer, and to either stay this action until resolution of LG's supplier, Google Inc.'s ("Google")  action in the Northern District of California ("NDCA" or "California Court") or to transfer this action to that court.

## ISSUES PRESENTED

Did the District Court abuse its discretion by denying LG's motion to stay or to transfer ("Motion") this action to the NDCA?  Specifically:

1.      Did the District Court clearly abuse its discretion by failing to dismiss, transfer, or stay Rockstar's EDTX case against Google after the NDCA held that the NDCA action was the first-filed case and that it would retain its case concerning the same patents, parties, and accused product and by premising the District Court's denial of LG's Motion on its erroneous denial of Google's similar motion to stay or transfer and Google's continued presence in the EDTX?

2.      Did the District Court clearly abuse its discretion by failing to transfer this action to the NDCA or stay this action, after the NDCA held that it was the first-filed case, that the Google California action would likely be dispositive of the

1

LG action in the EDTX, that the customer-suit exception also applied to Google's customers, and that the District Court could transfer or stay LG's case?

3.    Did the District Court clearly abuse its discretion by failing to transfer this action to the NDCA under § 1404 by not analyzing the convenience factors in view of the precedence to be given Google's action in the NDCA forum, and by considering other actions brought by Rockstar against Google's customers in the EDTX, thus avoiding a full and fair consideration of LG's transfer motion?

## SUMMARY OF ARGUMENT

The Google Android Operating System ("Android OS") supplied to LG forms the basis under which Rockstar alleges infringement by LG and other mobile device manufacturers in the EDTX.  In order to eliminate the threat Rockstar's claims pose, Google brought a declaratory action in the NDCA asserting that its Android OS does not infringe the same patents asserted against Google's customers in Texas.  The Google NDCA action will proceed as the NDCA ruled that it is the first-filed action, that the customer-suit exception also applies, and that action will likely be dispositive of Rockstar's suits against Google's customers in Texas.  Instead of staying or transferring Rockstar's suit against LG, the District Court clearly abused its discretion by ignoring the NDCA's holdings,  violating fundamental principles of judicial comity, and committing additional clear errors. Accordingly, LG respectfully requests that this Court correct those clear errors.

## STATEMENT OF RELEVANT FACTS

**A.    The Parties.**

**1.    Nortel, Rockstar, and MobileStar.**

In its separate petition for writ of mandamus filed with this Court in Misc. No. 2014-147 on August 14, 2014, Google sets out the relevant facts surrounding Nortel's original ownership of the asserted patents, Rockstar's purchase of the asserted patents through a bankruptcy auction process, and the transfer of selected asserted patents to MobileStar.  LG adopts those facts from Google's petition.

**2.    LG.**

LG Electronics Inc. is a Korean corporation whose principal offices are located in Seoul, Korea.    A559.    LG Electronics U.S.A., Inc., a Delaware corporation whose principal offices are in New Jersey, is a wholly-owned subsidiary of LG Electronics, Inc..  A85.  LG Electronics MobileComm U.S.A., Inc., a California corporation with its principal offices located in San Diego, California, is a wholly-owned subsidiary of LG Electronics U.S.A., Inc. A80.

**B.    Rockstar Files Actions Against LG and Other Google Customers in Texas Based on Their Sale of Certain Mobile Devices Incorporating Google's Android OS—But Does Not Sue Google Itself**

On October 31, 2013, Rockstar sued LG in the EDTX for infringement of seven patents: U.S. Patent Nos. 5,838,551; 6,037,937; 6,128,298; 6,333,973; 6,463,131; 6,765,591; and 6,937,572 (the "patents-in-suit.").  A2, A57.  Rockstar

3

alleges that LG infringes the patents-in-suit by "making, using, selling and offering to sell . . . certain mobile communication devices having a version (or an adaption thereof) of Android operating system [*sic*] ('LG Mobile Communication Devices.')."  A2, A57, A562.  By Rockstar's express definition, the only accused LG mobile devices are devices using the Android OS.  *Id.*  LG is an Original Equipment Manufacturer ("OEM") of mobile devices incorporating the Android OS.  A57, A80-1.  LG sells other mobile devices that do not incorporate the Android OS, but those devices are not accused in this case.  A57, A81.

Rockstar also filed six other separate suits in the EDTX against other OEMs, alleging infringement of the same patents-in-suit by ASUS, Huawei, HTC, Pantech, Samsung and ZTE.  A2, A14, A24, A57.  The actions against LG and the other OEMs (the "OEM actions") each allege infringement by mobile devices incorporating the Android OS.  *Id.*  Observers immediately viewed these actions as an attack on the Android OS and Google.  A29.  But Rockstar did not sue Google directly; instead it moved to attack only Google's customers—makers of devices using Google's Android OS.  A29, A31-3.  Rockstar could have sued Google when it sued the other OEMs in Texas and asserted that Google infringed the same patents by selling the same product, but opted not to.  A2, A24, A31-3, A57.

**C.    Google Files Suit in the Northern District of California to Protect Its Android OS Customers Including LG**

Even though Google was not a named defendant, Rockstar's actions accused

Google's Android OS.  A2, A14, A24, A57.  Accordingly, on December 23, 2013, Google, the developer of the Android OS, filed an action against Rockstar in the NDCA seeking a declaratory judgment that its Android OS does not infringe the same seven patents that Rockstar had previously asserted against the OEM defendants.  A2, A24, A31-4, A57. Google's complaint is not limited to any version of the Android OS, or to use of the Android OS in any particular device. Instead, Google's complaint requests a declaration that no version of the Android OS infringes the patents-in-suit.  *Id.*

Only after Google brought its action in the NDCA, did Rockstar amend its complaint against Samsung to include allegations of infringement against Google on the patents-in-suit.  A14-5, A32-3, A40, A57.  Thus, in both California *and* Texas, Rockstar now asserts that Google infringes the very same patents by making the very same products.  A2, A14-5, A31-4, A40, A57.

### D.    Rockstar Moves to Dismiss or to Transfer Google's Action in the Northern District of California to the Eastern District of Texas

On January 23, 2014, Rockstar moved to dismiss or to transfer Google's California action.  A11.  Rockstar first argued that the NDCA lacked personal jurisdiction over its subsidiary, MobileStar.  A17-30.  Second, Rockstar argued that the court should dismiss Google's action against Rockstar as second-filed.  A30-4. Third, Rockstar argued that the § 1404 convenience factors favored transferring Google's action to Texas.  A34-8.

5

**E.** **The Northern District of California Denies Rockstar's Motion to Dismiss or to Transfer and Issues Significant Holdings Highly Relevant To LG's Motion to Stay or Transfer.**

On April 17, 2014, the NDCA denied Rockstar's motion to dismiss or to transfer. A11-38. In so ruling, Judge Wilken, the Chief Judge of the NDCA, made several holdings that were highly relevant to the motion to stay or transfer filed by LG's supplier, Google, in the EDTX, and LG's similar Motion.

**1.** **Google's California Action, Not Rockstar's Texas Action Against Google's Customer Samsung in Texas, Was First-Filed.**

The NDCA agreed that the "court of the actual first-filed case should rule on motions to dismiss or transfer based on exceptions to the first-to-file rule or on the convenience factors." A33 (quoting *Micron Techs., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008).) Rockstar argued that its OEM action against Google's customer Samsung (but not Google initially) was first-filed because it involved "substantially the same parties" as implicated in Google's California action. However, the NDCA held that Google's action was first-filed. A33-34.

**2.** **LG is a Customer of Google With Respect to the Accused Android OS Product, the Customer-Suit Exception Also Applies, and Because the Determination of Infringement Issues in Google's California Action "Would Likely Be Dispositive" of the OEM Actions in Texas, the California Action Takes Precedence.**

The NDCA held that "Google's Android products" are "the target of [Rockstar's] infringement action." A35. Consequently, the NDCA concluded that

6

"the relationship between Google and [LG] is one of manufacturer and customer" and that even if the OEM actions in Texas were considered first-filed instead of the Google California action, "the customer-suit exception to the first-to-file rule would apply." A34. The NDCA further held that:

> **Because the determination of the infringement issues here would likely be dispositive of the other [OEM] cases, and the manufacturer presumably has a greater interest in defending against charges of patent infringement than the customers, the present suit takes precedence.** (A34.)

In discussing Google's customers, such as LG, and how the convenience of the NDCA extended to third-party witness Apple, based on Apple's unique and critical knowledge, the NDCA held there was a "direct link" between Apple and Rockstar's actions against Google and its customers. A28. Observing that Apple contributed $2.6 billion, or 58% of the $4.5 billion paid by Rockstar Bidco (a consortium consisting of Apple, Microsoft, RIM, Ericcson, Sony and EMC) (A27), the NDCA noted that Rockstar's strategy of suing Google's customers "is consistent with Apple's particular business interests." A29. The NDCA held that Rockstar limited its infringement claims in the EDTX "to Android-operating devices only" and, noted, "[t]his 'scare the customer and run' tactic advances Apple's interest in interfering with Google's Android business." A29.

> ### 3. Rockstar Is Based in Canada, Has No Essential Witnesses in Texas, and Its Related Entity, MobileStar, is a Sham Created to Dodge Jurisdiction.

7

The NDCA also held that: (1) Rockstar's "primary operations and headquarters are in Canada"; (2) Rockstar's "'nerve center,' or the place where its 'officers direct, control, and coordinate the corporation's activities,' thus appears to be in Ottawa, Canada"; (3) Rockstar's "operations appear to be based in Canada, not Texas"; (4) Rockstar "could not name any witnesses in Texas essential to the suit"; and (5) "although [Rockstar] claim[s] to have substantial ties to Texas, [its] headquarters appear to be in Canada." A13, A35, A37. The NDCA also held that "the circumstances here strongly suggest that Rockstar formed MobileStar as a sham entity for the sole purpose of avoiding jurisdiction" outside Texas. A19.

> **4.    The Private and Public Convenience Factors under § 1404 Favor Maintaining the Google Action in California, Not Texas.**

The NDCA found the § 1404 factors favored the NDCA, not the EDTX. A34-8. Noting that the "convenience and availability of witnesses is 'probably the single most important factor' in the transfer analysis," the NDCA held this "factor favors California because Google's Android products, the target of this infringement action, were designed and created here," because "[m]any of the witnesses who can testify to the design and development of the accused Android platform's features reside near Google's headquarters in Mountain View, California," and, finally, that "[o]ther witnesses, such as the inventors of the patents-in-suit, are likely to be in Canada." A25. The NDCA also held that "much

of the evidence is here. Some of the evidence may be in Canada or other states; however, that does not make Texas the more convenient forum." A38. The NDCA found that the NDCA itself "has the greater interest in this litigation because the claims here will 'call into question the work and reputation of several individuals residing in or conducting business in this community.'" A37. Considering all of the § 1404 factors, the NDCA held that the litigation between Google and Rockstar should proceed in the NDCA, not in the EDTX. A38.

### F. LG Moves to Stay or Transfer its Eastern District of Texas Action to the Northern District of California

On March 25, 2014—while this case was still in its infancy, before the parties had engaged in any discovery, and long before LG's Answer was due—LG moved to stay or transfer its action from the EDTX to the NDCA. A50-73. LG's Motion explained that because the identical seven patents and Google Android OS at issue in Google's California action were also at issue in Rockstar's Texas infringement action against LG, LG's case should be stayed pending resolution of Google's California action or transferred to the NDCA. *Id.* LG sought to stay the EDTX action on two grounds: (1) the Court's inherent authority; and (2) the "customer-suit" exception. A58-63. LG alternatively requested that the District Court transfer the Texas LG action to the NDCA, arguing that the factors under 28 U.S.C. § 1404, weighed heavily in favor of the NDCA. A63-71.

9

**G.     The District Court Ignores the Northern District of California's Significant Holdings and Denies LG's Motion to Stay or Transfer.**

On July 30, 2014, more than four months after LG filed its Motion, the District Court denied LG's Motion.    A1-10.    The District Court agreed that Rockstar accused only LG's "Android-based phones" of infringing the patents-in-suit (A2), and acknowledged that Google had filed a declaratory action in the NDCA "seeking a judgment that the Android [OS] does not infringe the patents at issue in [LG's] case" (*Id.*).    In its previous denial of LG's supplier, Google's motion, the District Court confirmed that it was aware that the NDCA "issued an opinion denying Rockstar's motion to dismiss, finding that the California action was the first filed between Rockstar and Google" (A40), yet ignored the NDCA's significant holdings in both its denial of LG's and Google's motions.

## STANDARDS OF REVIEW

Writs of mandamus are available for "extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power."    *In re TS Tech. USA Corp.*, 551 F.3d 1315, 1318 (Fed. Cir. 2008).    An abuse of discretion occurs when: "(1) the court's decision was clearly unreasonable, arbitrary, or fanciful; (2) the decision was based on an erroneous conclusion of law; (3) the court's findings were clearly erroneous; or (4) the record contains no evidence upon which the court rationally could base its decision."    *Minn. Mining and Mfg. Co. v. Norton Co.*, 929 F.2d 670, 673 (Fed. Cir. 1991).    "If the district court clearly abused its

10

discretion," the moving party's "right to issuance of the writ is necessarily clear and indisputable." *In re TS Tech.*, 551 F.3d at 1318-19; *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc).

The Fifth Circuit has not addressed the standard of review for district court decisions involving comity issues after a sister court has accepted jurisdiction of a first-filed patent action, but has noted that its comity precedent "severely limit[s] the district court's discretion." *West Gulf Maritime Assoc. v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 n.2 (5th Cir. 1985). "[B]oth this Court and the Fifth Circuit have made clear that a motion to transfer venue pursuant to § 1404(a) should be granted if the movant demonstrates that the transferee venue is clearly more convenient." *In re WMS Gaming*, No. 14-107, 2014 WL 1614530, at *2 (Fed. Cir. Apr. 23, 2014)(quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) and *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013)).

## REASONS WHY THE WRIT SHOULD ISSUE

**I.  THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION BY NOT GIVING PRECEDENCE TO GOOGLE'S CALIFORNIA ACTION AND THE SIGNIFICANT HOLDINGS OF THE CALIFORNIA COURT.**

The District Court clearly erred by failing to give precedence to the decision by the California Court hearing the declaratory judgment action involving LG's supplier (Google), Rockstar, and the same seven patents and Google Android OS at issue in LG's action. The NDCA decided to retain Google's action under the

11

first-filed doctrine and the customer suit exception. A33-4. Based on the first-filed doctrine and principles of judicial comity aimed at conserving judicial resources, comprehensively disposing of litigation, and avoiding duplication, the District Court should have dismissed, transferred, or stayed Rockstar's action against Google in the EDTX. Furthermore, in its decision denying LG's Motion, the District Court should not have considered and relied upon its earlier, erroneous denial of Google's motion and that Google remained in Texas based on that denial.

The District Court should also have transferred or stayed Rockstar's action against LG based on the California Court's holdings that the Google California action would likely be dispositive of the LG action, that LG was a customer of Google with respect to the accused Android OS, that the customer-suit exception also applied, and that the District Court could transfer or stay the LG action.

The NDCA held that its action was first filed and, in any event, "the relationship between Google and [LG] is one of manufacturer and customer," so "the determination of the infringement issues here would likely be dispositive of the other cases." A34. Accordingly, under controlling law, Google's suit in California and the California Court's holdings take precedence. "The federal courts long have recognized that the principle of comity requires federal district courts . . . to exercise care to avoid interference with each other's affairs." *West Gulf*, 751 F.2d at 728-29 (5th Cir. 1985); *See also Futurewei Techs., Inc. v. Acacia*

*Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013) (the "'first-to-file' rule exists to 'avoid conflicting decisions and promote judicial efficiency'").

In order to "avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result," a district court should dismiss, transfer, or stay a later filed action where most of the issues presented can be resolved in the first-filed action. *West Gulf*, 751 F.2d at 729 n. 1; *See also Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012) ("Under the first-to-file rule, a district court may choose to stay, transfer, or dismiss a duplicative later-filed action.").[1]

The Fifth Circuit has held that once the first-filed court determination has been made, the first-filed court—and not the second-filed court—is exclusively responsible for determining whether later-filed cases should proceed:

> Once the likelihood of substantial overlap between the two suits had been demonstrated, it [is] no longer up to the [second filed court] to resolve the question of whether both should be allowed to proceed. . . . the ultimate determination of whether there actually [is] a substantial overlap requiring consolidation . . . belonged to the [first filed court].

(*Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971); *See also Save Power Ltd. v. Synteck Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) ("the court in

---

[1] *See also Sawgrass Techs, Inc. v. Texas Original Graphics, Inc.*, Case No. 06-1190, 2007 U.S. App. Lexis 5084, *7-*9 (Fed. Cir. Mar. 2, 2007) (upholding district court's transfer order stating "the 'first-to-file' rule proposes that when an action involving the same parties and issues has already been filed in a different federal district, the court may either transfer, stay, or dismiss the second suit.")

which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed."). Thus, the first-filed court is responsible for deciding whether the second-filed case should be dismissed, stayed, or transferred. *Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997) ("[T]he 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated.") This Court agrees: "Under the first-to-file rule, a district court may choose to stay, transfer, or dismiss a duplicative later-filed action." *Merial Ltd. v. Cipla Ltd.,* 681 F.3d at 1299.

The District Court compounded these errors by (1) proceeding to evaluate the transfer and stay issues raised by LG—without recognizing that the case involving LG's supplier, Google, was first-filed and also subject to the customer-suit doctrine, (2) by disregarding the NDCA's specific holdings, and (3) by ignoring fundamental principles of judicial comity.[2]

---

[2] In ignoring the first-filed California Court's significant holdings, the District Court took inconsistent positions that further highlight that it clearly erred in denying LG's motion to stay or transfer. For example, the District Court found that Rockstar's cases before it "will present common issues of claim construction and damages, and (most likely) validity" (A9), while simultaneously finding that Rockstar's claims against Google in California will *not* "dispose of key issues in this case and the other related Rockstar litigations" (A4). These findings are polar opposites. According to the District Court, Rockstar's claims against ASUS, HTC, LG, Pantech and ZTE are *so similar* to its claims against Google (in Texas) that

**A.    The District Court Clearly Erred By Failing to Dismiss, Transfer, or Stay Rockstar's Second-Filed Action Against Google and By Basing Its Decision to Deny LG's Motion to Stay or Transfer on its Erroneous Denial of Google's Similar Motion to Stay or Transfer and Google's Continued Presence in the Texas Case.**

The NDCA held that *it* was the first-filed action between Rockstar and Google (A33-4) and that its action takes precedence, but stopped short of directing the District Court to dismiss, transfer, or stay Rockstar's action against Google in the EDTX. *See Sutter Corp.*, 125 F.3d at 920; *Sawgrass Techs, Inc.*, 2007 U.S. App. Lexis 5084 at *7-*9.  Instead, the NDCA left it up to the District Court to dismiss, transfer, or stay Rockstar's Google action in Texas.

The District Court did confirm that the NDCA "issued an opinion denying Rockstar's motion to dismiss, finding that the California action was the first filed between Rockstar and Google," but ignored the NDCA's holdings in denying Google's motion to stay or transfer.  A40.  Its refusal to dismiss, transfer, or stay Rockstar's action against Google was clear error because it: (1) defeated the purpose of the first-filed rule, *i.e.*, to avoid conflicting rulings and duplicative litigation, and (2) ignored fundamental principles of judicial comity.  The District

---

they present significant common issues, but Rockstar's claims against Google (in California) are *so different* from its claims against Google (in Texas) that they will not resolve "major issues."  A4, A9.  If the first statement is true, the second cannot be. *See Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986) (reversing ruling by district court depending on "internally inconsistent" findings).

Court's reliance on its denial of Google's motion and the fact that Rockstar's action against Google, the supplier of the accused product to LG, improperly remained pending in the EDTX to support its denial of LG's Motion was also clearly erroneous and infected the District Court's entire decision.  A2, A6, A9.

**B.    The District Court Clearly Erred By Failing to Follow the California Court's Holdings that the Google California Action Would Likely Be Dispositive of the LG action, that the Customer-Suit Doctrine Also Applied, and that the District Court Could Transfer or Stay the LG Action.**

The California Court also held "because the determination of the infringement issues here would likely be dispositive of the other [OEM] cases, and the manufacturer presumably has a greater interest in defending against charges of patent infringement than the customers, the present suit takes precedence."  A34. In line with that holding, the NDCA held that "Google's Android products" are "the target of [Rockstar's] infringement action" and that "the relationship between Google and [LG] is one of manufacturer and customer." A34-5. Accordingly, even if Google's suit against Rockstar had not been found to be first-filed, "the customer-suit exception to the first-to-file rule would apply."  A34.  Finally, the California Court further held that "The [LG Action] might not and need not be transferred here.  [It] might be stayed in Texas and be reopened upon completion of this suit, which likely will resolve some of the infringement issues there.  If the Texas actions are transferred here, they can be consolidated with this case at least

for pretrial purposes." A36.

The District Court clearly erred by failing to consider, much less follow the first-filed California Court's holdings that: (1) the customer-suit doctrine applies; and (2) LG's action may be transferred to the NDCA or stayed. A34, A36. Under controlling law, the NDCA was responsible for making these holdings and the District Court should have followed them instead of issuing its own, unsupported, and conflicting findings. *Save Power*, 121 F.3d at 950 ("the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed.").

Notably, the NDCA's customer-suit doctrine holding is consistent with this Court's decisions discussing the doctrine. The NDCA noted that Rockstar asserts six of the seven patents-in-suit against Android OS, which Google designed and developed—and, even on its hardware patent, Rockstar limited its "infringement claims to Android-operating devices only." A29, A34. Rockstar's infringement contentions to LG assert only source code that comes from Google's Android Open Source Project or the open-source Linux kernel. A61-3, A80-81, A93-94, A133-222. These contentions expressly claim that Google's Android OS code can show infringement by all of the accused devices from LG. A133-222.

This Court has repeatedly held that a manufacturer suit takes precedence. *In re Nintendo of Am.*, No. 14-132, 2014 WL 2889911, *2 (Fed. Cir. 2009) ("When a

patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally takes precedence."); *see also Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) ("Generally speaking, courts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum.").  Further, "the manufacturer's case need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of the customer suits." *Spread Spectrum* , 657 F.3d at 1358 (citing *Katz*, 909 F.2d at 1464); *Nintendo of Am.*, 2014 WL 2889911, at *2 ("although there may be additional issues involving the defendants in the customer action, their prosecution will be advanced if the plaintiff is successful on the major premises being litigated in the manufacturer litigation, and may well be mooted if the plaintiff is unsuccessful.").

As the NDCA held here, the California Google action has the potential to resolve all of the issues—not only the "major issues."  A34.  The District Court's failure to abide by the California Court's decisions and follow judicial comity principles aimed at avoiding duplicative litigations constitutes clear error.

## II.    THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION BY CONSIDERING THE OTHER ACTIONS BEFORE IT, ALSO SUBJECT TO MOTIONS TO TRANSFER, DEFEATING CONGRESS' PURPOSE IN THE AIA

The District Court clearly erred by considering, in its discussion of judicial economy, Rockstar's OEM actions against other defendants in Texas, each of which had sought transfer to the NDCA.  A2, A8-9.  Congress meant to prohibit precisely this possibility in passing the America Invents Act, Pub. L. No. 112-29, Sep. 16, 2011.  A primary purpose of the AIA's was to curtail litigation tactics Congress found abusive.  H.R. Rep. 113-279, 18.  One such mechanism was the bulk filing of actions in one district, a tactic employed most often in the EDTX. David O. Taylor, PATENT MISJOINDER, 88 N.Y.U. L. Rev. 652, 690 (2013).  These actions were often "anchored" in the plaintiff's chosen venue, as multiple defendants' documents were spread around the country, causing the plaintiff's chosen court to conclude it was as good a venue as any and deny transfer for that reason.  *Id.; see, e.g.*, *MHL Tek, LLC v. Nissan Motor Co.*, No. 07-289, 2009 WL 440627, at *4 (E.D. Tex. Feb. 23, 2009) (denying transfer with "many defendants" where "party witnesses will come from all over the globe").

To address this concern, Congress in the AIA mandated more stringent joinder rules.  35 U.S.C. § 299.  This rule stopped plaintiffs from filing multi-defendant cases in a chosen district.  *See* Tracie L. Bryant, *The America Invents Act: Slaying Trolls, Limiting Joinder*, 25 HARV. J.L. & TECH. 687, 703 (2012).  The District Court clearly erred by allowing precisely the result Congress sought to prohibit.  In considering LG's Motion, the District Court, in a section entitled

"Other Practical Problems," noted that "There are six Rockstar litigations currently proceeding in the [EDTX], each suit alleging violations of the same patents. The Court has already consolidated these cases for all pre-trial purposes save venue." Based on those statements, the District Court found that considerations of "judicial economy" "weigh against a transfer."[3] A8-9. Although the defendants in those cases had already filed their own motions to transfer, and the District Court had notably chosen ***not*** to consolidate the actions for venue purposes, the District Court ignored those motions, simply assuming that all actions would remain before it. *Id.* Since then, the District Court has denied all of defendant's motions to transfer.

This was grave error. The District Court created a self-fulfilling prophecy, denying transfer of each action because of the others pending before it, and thus never fairly considered LG's Motion. The District Court's bootstrapping denials violated not only the AIA, but also this Court's rule that courts cannot "properly rely on judicial economy involved in retaining the very cases that were the subject of the transfer motion." *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013). The District Court let Rockstar do what Congress intended the AIA to stop—litigate in its preferred district simply by suing many defendants. As the EDTX has previously acknowledged, the law does not allow this:

---

[3] The District Court cited *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)—a pre-AIA case—in support of its finding. A9.

The Court will not permit the existence of separately filed cases to sway its transfer analysis. Otherwise, a plaintiff could manipulate venue by serially filing cases within a single district. Allowing a plaintiff to manufacture venue based on this alone would undermine the principles underpinning transfer law and the recently enacted America Invents Act.

*GeoTag, Inc. v. Starbucks Corp.*, No. 10-572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013). The District Court's significant mistake constitutes clear error.

## III.  THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION IN FINDING TEXAS TO BE THE MOST CONVENIENT FORUM

### A.  The District Court Clearly Erred By Failing to Defer to The California Court's Convenience Factors Holdings and By Failing to Analyze The Convenience Factors in View of the Presumptive California Forum.

The District Court also clearly erred in failing to defer to the first-filed court's holding that California was the more convenient forum for the action between LG's supplier, Google, and Rockstar, and by not considering that holding in its denial of LG's Motion. The NDCA held that the "court of the actual first-filed case should rule on motions to dismiss or transfer based on the convenience factors." A34-5.

As further instructed by *Micron Techs.*, the NDCA determined whether "an exception to the general rule giving preference" to the California action was merited. A34-5. After analyzing the § 1404 factors, the NDCA concluded, that the relevant factors favor the NDCA. A34-8. Thus, the NDCA had already performed a full transfer analysis under § 1404(a) and held, that the NDCA was the presumptive forum for LG's supplier's action against Rockstar. *See Micron*

21

*Techs.*, 518 F.2d at 904 ("The general rule favors the forum of the first-filed action.")[4]

The District Court ignored the NDCA's holding that California is the more convenient forum for the action brought by LG's supplier, Google against Rockstar, much less its analysis of the convenience factors.  Instead, as shown below the District Court seemingly went out of its way to avoid the convenience of the California forum, giving undue weight to inaccurate facts and drawing unreasonable inferences from the evidence.

### B.    The District Court Clearly Erred by Crediting Rockstar's Made-For-Litigation Office in Plano, Texas

Notwithstanding the NDCA's holdings that Rockstar has no presence in Texas (*see* E (3), *supra*),   the District Court's order denying transfer relied heavily on Rockstar's satellite office in Plano, Texas.  *E.g.*, A6, A8.  But it was clear error to credit this office at all, which Rockstar established solely to bolster its venue

---

[4] Specifically, the California Court correctly found that the convenience and availability of witnesses, which this Court has deemed the "single most important factor" in the transfer analysis, favors the NDCA—and not the EDTX.  A35; *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009).  The NDCA held that "Google's Android products, the target of this infringement action, were designed and created here [in the Northern District].  Many of the witnesses who can testify to the design and development of the accused Android platform's features reside near Google's headquarters in Mountain View, California."  A35.  Further, Apple, the majority shareholder of Rockstar, is in the Northern District of California.  A27.  There is a "direct link between Apple's unique business interests, separate and apart from mere profitmaking, and [Rockstar's] actions against Google and its customers.  *See* A27-8.

claims, because courts cannot credit "connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient." *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011); *see also In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010).

As further discussed in Google's writ, Misc. No. 2014-147, which LG incorporates, Rockstar's presence in Plano, Texas is entirely an artifact of litigation and the District Court did not address the facts submitted on this point. When examined, however, Rockstar's rationale for its satellite office in Plano quickly collapses and, as the EDTX has previously acknowledged, following *Zimmer* and *Microsoft* "it is the Court's duty to carefully scrutinize" party assertions supporting venue claims, "to determine whether the party is trying to manipulate venue through its place of incorporation or principal place of business." *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, No. 10-216, 2012 WL 462956, at *3 (E.D. Tex. Feb. 13, 2012). The District Court here failed to "carefully scrutinize" Rockstar's claim, accepting without question its unsupported assertions, and ignoring the NDCA's holding that Rockstar's actual headquarters is in Ottawa, Canada. A13. The District Court's ruling depends on the Plano facility, so this clear error requires reversal. A6, A8.

### C.    The District Court Clearly Abused Its Discretion and Ignored Precedent, Including Its Own, in Ruling on the § 1404 Factors

After improperly crediting Rockstar's office in Plano and disregarding that

the California Court had determined California was the preferred forum for LG's supplier's suit against Rockstar, the District Court also committed clear error in evaluating the convenience favors and denying transfer.

### 1.    Cost of Attendance of Willing Witnesses

LG primarily relied on the location of Google's witnesses but also referenced and incorporated LG's witnesses to support its Motion.  A64-7, A80-3, A85-6, A95.  In its denial of Google's motion, the District Court found that "Many of the Google employees who work on the Android operating system are located in or near the [NDCA]" and that "Google employees from northern California would face substantial costs in traveling to the [EDTX] for trial."  A45.  Likewise, in its denial of LG's Motion, the District Court acknowledged that LG argued that Google witnesses would testify as willing witnesses and found that "LG employees from San Diego and San Jose would face somewhat lower costs in traveling to the NDCA rather than the [EDTX]."  A8.  Further, the District Court noted that this was a "critical" or "key" factor in the District Court's analysis.  *Id.*  Despite these findings, the District Court found this factor "weighs slightly against transfer" as transfer would "merely redistribute the inconvenience of travel among parties."  *Id.*

To reach this conclusion, however, the District Court made several clear errors.  First, the District Court noted that "Rockstar has identified several potential witnesses who work at its Plano office"—in fact, exactly three—but did *not* note

24

that Google had identified *several hundred* Android engineers who work in the San Francisco Bay Area nor did it note that LG had identified several Google and LG employees in California.  A64-7, A80-3, A85-6, A95.  Google and LG did even more than that.  Google's unchallenged declaration established that Mountain View is the "strategic center of Google's business," housing not only Hiroshi Lockheimer, Vice President of Engineering for Android, but also the vast majority of Android employees in his group. A64, A958-60.  Similarly, the District Court found that LG made "no particular assertions about its likely witnesses," disregarding LG's unchallenged declarations listing numerous LG witnesses in California.  A80-3.  Second, in reaching its determination and despite acknowledging that LG had argued that Google's witnesses were willing witnesses and should be considered, the District Court only referenced LG's witnesses in its determination that there would be a redistribution of inconvenience—it failed to address Google's witnesses.  A8.  It was thus clear error to conclude that "if the court were to transfer this case, roughly equivalent costs would be imposed on Rockstar's witnesses"—because, on the record before it, substantially more witnesses would travel from Google (and LG) than from Rockstar.  A64-7, A80-3, A85-6, A95, A957-60.  Notably, elsewhere the District Court acknowledged in its denial of Google's and LG's motion that "the bulk of the relevant evidence in this action will come from Google [and LG]"—but, erroneously, not while discussing

this factor.  A5, A43.  Third, the District Court clearly erred in concluding that travel to the EDTX would be only marginally more inconvenient than travel to California for foreign witnesses located in Korea. A8.

## 2.    Local Interest

The District Court found that the local interest factor was neutral (A9), further erring by ignoring binding precedent finding strong local interest where an accused product was designed "because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."  *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009); *see also, e.g., In re TOA Techs, Inc.*, 543 F. App'x 1006, 1010 (Fed. Cir. 2013) ("significant interest in trying this case in a venue in which the accused product was designed").  As this Court found in *Hoffmann-La Roche*, ignoring this interest is an abuse of discretion:

> The district court also disregarded *Volkswagen* and *Genentech* in holding that the [transferee district] had no more of a local interest in deciding this matter than the Eastern District of Texas.  While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor.

587 F.3d at 1338 (citations omitted).  Following these cases, the EDTX previously acknowledged that the "[NDCA] has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley." *Affinity Labs*

*of Texas v. Samsung Elecs. Co*., 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013). Here, however, the District Court ignored these cases, finding instead only "a predisposition toward one party" to which it accorded "no weight in its analysis." A9. This was clear legal error. If this Court felt that the local interests it identified were in fact mere jury bias, it would not have ruled as it did in *Hoffmann-La Roche* or *TOA*. The District Court thus improperly overrode this Court's decisions, although they were directly on point—clear error mandating reversal. *E.g., Troy v. v. Samson Mfg. Corp*., 2013-1565, 2014 WL 3377125, at *3 (Fed. Cir. July 11, 2014) ("Indeed, lower courts are bound not only by the holdings of higher courts' decisions but also by their 'mode of analysis.'").

### 3. Compulsory Process

As the District Court found, this factor primarily concerns "witnesses for whom compulsory process to attend trial might be necessary." A6. Google (and LG) listed four types of such witnesses residing in the NDCA and thus subject to process there, but not in the EDTX: Apple employees, at least one named inventor, prior artists, and former Android employees. A7-8, A68-69, A96-7. Of these, Apple witnesses are the most important; as the NDCA held, "Google demonstrates a direct link between Apple's unique business interests, separate and apart from mere profitmaking, and Defendants' actions against Google and its customers." A28. The District Court did not address any of these points, noting

only that "the Court views Google's asserted interest in Apple's testimony with some skepticism." A7 Again, this was error; as the NDCA noted, "Google and Apple's rivalry in the smartphone industry is well-documented," and Rockstar's "litigation strategy of suing Google's customers in the [OEM] actions is consistent with Apple's particular business interests." A29. LG presented evidence showing Apple's importance to this action, and Rockstar presented no contrary evidence; it was clear error for the District Court to dismiss Apple's uniquely important role, as well as the NDCA's findings on this point. Concluding that "one inventor's presence in the [NDCA] weighs in favor of transfer, but is counterbalanced by the presence of several non-party witnesses in Texas," the District Court erroneously found this factor to be neutral (A7), when it weighed in favor of transfer.

### 4. Ease of Access to Sources of Proof

Despite acknowledging it "likely that the bulk of the relevant evidence in this action will come from Google" based in Mountain View, California, in its denial of Google's motion and also finding the same in its denial of LG's Motion (A5, A43), the District Court found this factor to weigh against transfer. A5-6. This too was clear error, resting on an abrogation of the District Court's prior cases. This factor turns on "which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *On*

*Semiconductor Corp v. Hynix Semiconductor, Inc.*, No. 09-0390, 2010 WL 3855520, at *2 (E.D. Tex. Sep. 30, 2010) (citing *Volkswagen*, 545 F.3d at 314-15).

Even if relevant documents are "spread throughout the country and world," this factor still favors transfer to the NDCA when it is closer to most of defendants' documents because, "typically in a patent case, the defendant has the majority of relevant documents." *Id.* at *4. In this action, however, the District Court refused to conclude that Google's and LG's relevant documents were in Mountain View, San Jose, and San Diego (A5-6, A43, A67-8, A80-83,A95-6)—cities located in the NDCA and California—but assumed, without any evidence, that Rockstar's patent-related documents were stored in Plano, Texas. A5-6. The District Court erred by inconsistently presuming Rockstar's patent documents were in Plano, Texas, but *not* presuming Google's and LG's relevant documents were in California. A5-6.

As further discussed in Google's writ, Misc. No. 2014-147, which LG incorporates, the District Court compounded its error by failing to credit Google's declarations and focused on other statements in the same declarations. From the other statements the District Court came to an erroneous conclusion and failed to credit the separate, unchallenged statement that "records regarding Google's Android platform are also predominantly based in Mountain View [California]." Likewise, the District Court failed to credit LG's unchallenged declarations stating that the only relevant documents were located in California, and no relevant

29

documents were located in Texas.  A80-3, A85-6.  The District Court compounded this error by fully crediting Rockstar's declaration, which stated only that unspecified and unnumbered "hard drives" and "boxes of hard copy documents" were in Plano. A284. It was clear error for the District Court to credit Rockstar's statement that some unidentified documents were in Plano, while refusing to credit LG's much clearer statements that any Android OS records are with Google, which is "predominantly based in Mountain View [California]" (A67-8, A95-6, A957-60) or in LG's possession in San Jose or San Diego, California.  *Id.*, A80-83.[5]

## CONCLUSION

Based upon the foregoing, LG respectfully requests that this Court issue a writ of mandamus directing to the United States District Court for the EDTX to vacate its order denying transfer or stay of this action, and to transfer this action to the NDCA or, stay this action until resolution of Google's action in the NDCA.

---

[5]   Finally, the Court again compounded its error by ruling that, "Because modern document production is done electronically, there is no practical difference between the burden of producing documents from the Southern District of California to the NDCA and that of producing them to the [EDTX]."  A5.  This ruling ignores law from this Court and the Fifth Circuit stating that, even when some electronic evidence is widely accessible, "this does not negate the significance of having trial closer to where [moving party] TOA's physical documents and employee notebooks are located."  *TOA*, 543 F. App'x at 1010; *see also Volkswagen*, 545 F.3d at 316.

Respectfully submitted,

DATED:  August 21, 2014

By _____
   Richard D. Harris
   Jeffrey G. Mote
   James J. Lukas, Jr.
   GREENBERG TRAURIG, LLP
   77 West Wacker Drive, Suite 3100
   Chicago, Illinois 60601
   Telephone: (312) 465-8400
   Facsimile: (312) 456-843

   *Attorneys for Petitioners LG Electronics,*
   *Inc., LG Electronics U.S.A., Inc., and LG*
   *Electronics MobileComm USA Inc.*

# ADDENDUM

# TABLE OF CONTENTS
# TO ADDENDUM

Memorandum Opinion and Order, Dkt. 44, Filed 7/30/14...........................A1

Order Denying Motion to Dismiss or, In the Alternative,
To Transfer, Dkt. 58, Filed 4/17/14...........................................................A11

Memorandum Opinion and Order, Dkt. 70, Filed 7/1/14..........................A39

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHOLOGIES, LLC, | § § § § | |
| *Plaintiff*, | § § | CASE NO. 2:13-CV-00894-JRG |
| *v.* | § § | **LEAD CASE** |
| LG ELECTRONICS, INC., *et al.*, | § § § | CASE NO. 2:13-CV-00898-JRG |
| *Defendants*. | § § § § | **MEMBER CASE** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants LG Electronics, Inc.'s, LG Electronics U.S.A., Inc.'s, and LG Electronics Mobilecomm USA Inc.'s (collectively, "LG") Motion to Transfer (Dkt. No. 35), filed March 25, 2014. For the reasons set forth below, the Court finds that the motion should be **DENIED**.

## I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Rockstar Consortium US LP, Inc. and Mobilestar Technologies, LLC are entities arising out of the demise of Nortel, a Canadian telecommunications company with a substantial patent portfolio. When Nortel confronted bankruptcy in 2011, it held an auction for its patents. Five major technology companies—Apple, Blackberry, Ericsson, Microsoft, and Sony—pooled their resources into Rockstar Bidco LP for the purpose of purchasing the Nortel patent portfolio at auction (Dkt. No. 38-8). Rockstar Bidco LP then transferred the patents in suit here to the Rockstar Consortium US LP, a Delaware limited partnership with its headquarters in

1

**A1**

Plano, Texas and one of the plaintiffs in this case. *Id.* Rockstar Consortium US LP subsequently created a wholly-owned subsidiary, MobileStar Technologies, LLC, to which it assigned five of the seven patents-in-suit. *Id.* Meanwhile, Rockstar Consortium Inc. was formed as a vehicle to hire certain of Nortel's former employees. *Id.* Rockstar Consortium US LP contracts with Rockstar Consortium, Inc. for "intellectual-property-support services." *Id.*

Rockstar Consortium US LP, Inc. and MobileStar Technologies, LLC (hereinafter, collectively, "Rockstar") filed this suit against LG on October 31, 2013, alleging that LG infringes seven of Rockstar's patents, accusing certain mobile phones using a version of Google, Inc.'s ("Google") Android operating system (Dkt. No. 1). On the same day, Rockstar separately sued six other mobile phone manufacturers, again accusing Android-based phones.

On December 23, 2013, Google filed an action for declaratory relief in the United States Court for the Northern District of California (NDCA), seeking a judgment that the Android operating system does not infringe the patents at issue in this case. *Google Inc. v. Rockstar Consortium U.S. LP*, No. C-13-5933-CW (Dkt. No. 1). On July 1, 2014, this Court denied a motion in a related case to stay the case pending resolution of the *Google* case or to transfer that case to the NDCA (Case No. 2:13-CV-00894-JRG, Dkt. No. 122).

In this motion, LG asks the Court to stay the case pending resolution of the NDCA suit. In the alternative, LG asks the Court to transfer this case to the NDCA.

## II.   LEGAL STANDARDS

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). In deciding whether to stay litigation, courts typically consider "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2)

2

A2

whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Id.*

When cases between the same parties present the same issues for resolution, the general rule favors the first-filed action. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). However, "trial courts have discretion to make exceptions to this general rule in the interest of justice or expediency . . . . These exceptions are not rare." *Id.* In particular, "'litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.'" *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (quoting *Katz v. Lear Siegler, Inc.*, 909 f.2d 1459, 1464 (Fed. Cir. 1990)).

28 U.S.C. section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*).

Once that threshold is met, the movant has the burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Nintendo*, 589 F.3d 1194, 1200 (Fed. Cir. 2009); *In re TS Tech*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). In this regard, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319. The private factors include: (1) the relative ease of access to sources of proof; (2)

3

**A3**

the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203.   The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203.   Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive.  *Volkswagen II*, 545 F.3d at 314-15.

## III.   **STAY**

LG suggests that the Court stay proceedings in this case pending resolution of the *Google* litigation in the Northern District of California. The Court does not expect the current California litigation to dispose of key issues in this case and the other related Rockstar litigations. *See Spread Spectrum*, 657 F.3d at 1358. Though the patents-in-suit in the Texas litigations are the same, the suits' accused products are importantly different. Though each of the accused products uses some version of Android, a product driven primarily by Google, each defendant mobile phone manufacturer modifies and customizes the Android system to its own particular purposes (Dkt. No. 39-7). It is by no means clear, then, that resolving infringement issues as to Android *proper* will resolve issues relating to other manufacturers' various *implementations* of the Android system. These specialized implementations place these suits far outside of the usual "customer suit" exemption from the first-filed rule. *See Spread Spectrum*, 657 F.3d at 1358.

The Texas litigations also present issues relating to each phone manufacturer's devices and hardware, as the California litigation does not. One of the patents-in-suit claims only hardware (Dkt. No. 39-5). Rockstar alleges that the other patents-in-suit cover the interaction of the parties' Android implementations with hardware (Dkt. No. 1). Thus, only if the patents are *invalidated* completely in the California court will major issues in the Texas cases be resolved.

LG's request for a stay, then, should be denied.

## IV.   TRANSFER

### A.  Availability of the Transferee Venue

The parties agree that this suit could originally have been brought in the Northern District of California. The LG subsidiary responsible for importing and selling the accused products maintains its headquarters in San Diego, California. LG also maintains an office in San Jose, California, in the NDCA. Accordingly, the case could have been brought in the Northern District of California. *See In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).

### B.  Private Interest Factors

#### 1.  *Relative Ease of Access to Sources of Proof*

This being a patent case, it is likely that the bulk of the relevant evidence in this action will come from LG. *See In re Genentech*, 566 F.3d at 1345. LG avers that "[d]ocuments and records relating to LG-branded Android Products, such as sales agreements, marketing documents and marketing strategy reports, are either physically present or electronically accessible at the San Diego office" in the *Southern* District of California (Dkt. No. 34-13). Because modern document production is done electronically, there is no practical difference between the burden of producing documents from the Southern District of California to the NDCA and that of producing them to the Eastern District of Texas. Furthermore, LG's affidavit

5

in support of this motion pointedly does *not* make firm representations about the physical locations of its data (Dkt. No. 36). Rockstar, in contrast, avers that documentary evidence relating to the patents-in-suit is stored at its Plano, Texas headquarters—within the Eastern District of Texas (Dkt. No. 38-8). LG also suggests that Google retains documentary evidence at its headquarters in Mountain View, California, but the Court has already rejected that claim as insufficiently supported by evidence (Case No. 2:13-CV-00894-JRG, Dkt. No. 122).

The evidence supports the conclusion that a substantial body of relevant evidence exists in or near the Eastern District of Texas. The location of LG's documentary evidence is unclear, and, to the extent that the data is in San Diego, that data would be insubstantially more difficult to produce in this Court than the NDCA. The Court thus finds that this factor weighs against transfer. The Court notes, however, that given the ease in the modern era of transferring electronic data from one place to another, this factor weighs only slightly in its decision.

### 2. *Availability of Compulsory Process*

Under Federal Rule of Civil Procedure 45 (as recently amended), this Court may enforce a subpoena issued to any nonparty witness in the State of Texas to appear at trial, provided the party does not incur substantial expense. Fed. R. Civ. P. 45(c)(1)(B). Similarly, the Court may enforce any subpoena for a deposition to be taken within its boundaries, provided that the deposition is taken no more than 100 miles from a location where the person resides, is employed, or regularly transacts business in person. *See id.* at (a)(2), (c)(1)(A), (d)(3)(a); *Ingeniador, LLC v. Adobe Systems Inc.*, 2014 WL 105106, No. 2:12-cv-805-JRG (E.D. Tex. Jan. 9, 2014). Rule 45, however, makes compulsory process for deposition effectively nationwide. Moreover, party witnesses do not require compulsory process for trial and are not given much

6

weight in this factor. *See Ingeniador, supra.* Rather, the focus of this factor is on witnesses for whom compulsory process to attend trial might be necessary.

LG suggests that the case will require compulsory process for Google and Apple, Inc. witnesses and documents in or near Mountain View, California, and Cupertino, California, respectively. "[a]t least one named inventor resides in the [NDCA] . . . and dozens of relevant prior artists of record live in the [NDCA]" (Dkt. No. 35, at 13).

LG does not, however, identify any particular nonparty witnesses who are expected to testify at trial. Nor does the Court give particular credence to the assertion that prior artists will be called to testify; this Court has previously noted that "inventors of prior art rarely, if ever, actually testify at trial." *PersonalWeb Techs., LLC v. Target Brands, Inc.*, No. 6:11-cv-655-LED, Dkt. No. 74, at 15 n.13 (E.D. Tex. Mar. 21, 2013). Finally, though the Court views LG's asserted interest in Apple's testimony with some skepticism, it notes that other Rockstar parents—notably Ericsson and Blackberry—maintain U.S. headquarters in Texas (Dkt. Nos. 39-12, 39-13).

In contrast, Rockstar identifies two prosecuting attorneys and two former Nortel employees, in or near the Eastern District of Texas whom it suggests might be called to testify (Dkt. No. 37, at 11-12). It also suggests that LG customers such as AT&T and Verizon might be called to prove damages. *Id.* The Court is not convinced that any of these witnesses will likely be called to testify, but their appearance in the case is at least plausible.

Weighing all considerations of available compulsory process, the Court finds that this factor is neutral. One inventor's presence in the Northern District of California weighs in favor of transfer, but is counterbalanced by the presence of several potential nonparty witnesses in Texas.

7

*3. Cost of Attendance for Willing Witnesses*

The cost of attendance for willing witnesses is another key factor in the Court's analysis. LG argues that its employees in San Jose, California and San Diego, California, will be relevant, but makes no particular assertions about its likely witnesses.[1] LG also suggests that Google witnesses from the Northern District of California would testify as willing witnesses at trial (Dkt. No. 35, at 9). Rockstar's headquarters is in Plano, Texas, and Rockstar has identified several potential witnesses who work at its Plano office (Dkt. No. 35, at 7-8).

LG employees from San Diego and San Jose would face somewhat lower costs in traveling to the NDCA rather than the Eastern District of Texas for trial. However, if the court were to transfer this case, roughly equivalent costs would be imposed on Rockstar's witnesses. LG witnesses located overseas, by contrast, will be subjected to substantial costs in either venue.

Transferring this case would, at best, merely redistribute the inconvenience of travel among the parties; at worst, a transfer might substantially increase the cost of attendance for willing witnesses. *Cf. Thomas Swan & Co., Ltd. v. Finisar Corp.*, 2014 WL 47343, No. 2:13-cv-178-JRG (E.D. Tex. Jan. 6, 2014). Having considered the evidence, the Court finds that this factor weighs slightly against transfer.

*4. Other Practical Problems*

In this case, where multiple and parallel litigations in two different jurisdictions are contemplated, judicial economy weighs heavily in the Court's transfer analysis. *See In re*

---

[1] The Court notes that neither of LG's two US-based entities appear to design or manufacture the accused products. Common sense suggests that some LG witnesses might be traveling from overseas, which would make travel to this Court only marginally more inconvenient for those witnesses than a trip to the NDCA.

8

*Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). These considerations weigh against a transfer.

There are six Rockstar litigations currently proceeding in the Eastern District of Texas, each suit alleging violations of the same patents. The Court has already consolidated these cases for all pre-trial purposes save venue (Dkt. No. 32). The cases will present common issues of claim construction and damages, and (most likely) validity.

C. Public Interest Factors

1. *Local Interest*

LG argues that "'the [NDCA] has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley'" (Dkt. No. 35, at 14 (quoting *Affinity Labs of Texas v. Samsung Elecs. Co., Ltd.*, No. 12-CV-557-RC (E.D. Tex. Sept. 18, 2013))). Rockstar also suggests that its location in the Eastern District of Texas should lead the Court to find a specialized local interest in resolving the case (Dkt. No. 37, at 14-15). The Court has previously been highly skeptical of arguments that a particular jurisdiction has a "local interest" that amounts to a bias in its jury pool. *See Ingeniador*, 2014 WL 105106, at *3-4. A predisposition toward one party, independent of the merits of the case, cannot be the kind of "local interest" cognized by the federal rules, and this Court gives this consideration no weight in its analysis. The Court finds that this factor is neutral.

2. *Other Public Interest Factors*

Both parties agree that other public interest factors are neutral. The Court sees no reason to disagree with this conclusion.

9

Having considered all appropriate factors, the Court finds that LG has not shown that it would be clearly more convenient to transfer this case to the Northern District of California. LG's request for a transfer must therefore be denied.

## V.   <u>CONCLUSION</u>

The Court finds that a stay of proceedings would not serve the interests of justice, because major issues in this case and other pending cases will likely remain even after the California litigation is resolved. The Court also finds that the Northern District of California is not clearly a more convenient venue for this case.

Having considered the matter carefully, the Court finds that Defendants' motion (Dkt. No. 35) should be and hereby is **DENIED**.

10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE INC., | No. C 13-5933 CW |
| Plaintiff, | ORDER DENYING MOTION TO DISMISS |
| v. | OR, IN THE ALTERNATIVE, TO TRANSFER |
| ROCKSTAR CONSORTIUM U.S. LP, MOBILESTAR TECHNOLOGIES, LLC, | |
| Defendants. | (Docket No. 20) |

_____/

Google Inc. filed this declaratory judgment action for non-infringement of seven patents owned by Defendants Rockstar Consortium U.S. LP (Rockstar) and MobileStar Technologies, LLC (MobileStar). Defendants now move to dismiss or, in the alternative, to transfer the action to the Eastern District of Texas, where the action could be consolidated with several other actions filed by Defendants against Google's customers. Google opposes the motion or, in the alternative, requests jurisdictional discovery. The Court held oral argument on March 13, 2014. After considering the papers and the arguments of counsel, the Court DENIES the motion to dismiss or transfer.

BACKGROUND

Google is a corporation located in Mountain View, California. Docket No. 1 ¶ 2. Google produces the Android mobile platform, an open-source operating system that is used by many original equipment manufacturers around the world. Id. at ¶¶ 1-2.

Nortel Networks was a prominent Canadian telecommunications provider headquartered in Ottawa, Canada. See Madigan Decl., Exs. 1-2. Nortel had offices throughout the United States, including one in Santa Clara, California. See id., Ex. 2. On January 14, 2009, Nortel filed for bankruptcy. Id., Exs. 3-4. The bankruptcy court ordered an auction of Nortel's patent licensing operations, including a portfolio of over 6,000 patents "spanning wireless, wireless 4G, data networking, optical, voice, internet, service provider, semiconductors" and many other aspects of telecommunications and Internet search. Id., Exs. 4-6. Around the same time, five of the world's largest technology companies -- Apple, Microsoft, Research in Motion, Sony, and Ericsson -- jointly created and funded an entity called "Rockstar Bidco LP," a Delaware limited liability partnership. See id., Exs. 7-8. Apple contributed approximately $2.6 million to Rockstar Bidco. Id., Ex. 9 at 34. Both Google and Rockstar Bidco bid on the Nortel patent licensing operation at the June 2011 auction, but Rockstar Bidco ultimately prevailed with a bid of $4.5 billion. Id., Ex. 7.

Rockstar Bidco transferred around 2,000 patents to its owners, with at least 1,147 going to Apple. Id., Exs. 7, 14. Rockstar Bidco then reorganized itself into Rockstar, a Delaware limited partnership which claims a principal place of business in

**United States District Court**
For the Northern District of California

2

Plano, Texas.  Id., Exs. 7, 15.[1]  Led by former Nortel executive and current Rockstar CEO John Veschi, Nortel's patent portfolio and licensing team of about forty employees immediately moved to Rockstar.  Id., Exs. 10-12.  Rockstar's CFO and CTO had also been executives at Nortel.  Id.  Veschi and the rest of his team remain in Nortel's old headquarters in Ottawa, Canada.  Id., Ex. 12.  According to its own website, Rockstar produces no products, but operates a "patent licensing business that owns and manages a portfolio of more than 4,000 patents developed by" Nortel.  Id., Ex. 13.

Rockstar has worked with Mark Wilson, an independent contractor in California who provides Rockstar with "licensing consulting services."  Dean Decl. ¶ 34.  In Rockstar organization charts appearing in a news article to which Rockstar contributed and which it featured on its own website, Wilson was named as a "licensing executive" in senior management.  Madigan Decl., Exs. 12-13.  This suggestion of an employee relationship has now been deleted from the website and Wilson has removed "Rockstar Consortium" from his professional profile.  See id., Exs. 12-13,

---

[1] Although Defendants assert that they both have principal places of business in Texas, they have not named any executives or employees who reside or work there.  Rockstar's website and the declaration of Afzal Dean, Rockstar Vice President and President of MobileStar, identifies officers and board members who represent both Defendants and who are almost all based in Canada, except one in Colorado.  See, generally, Dean Decl; see also Madigan Decl., Exs. 10, 19, 23.  Rockstar's "nerve center," or the place where its "officers direct, control, and coordinate the corporation's activities," thus appears to be in Ottawa, Canada.  Hertz Corp. v. Friend, 559 U.S. 77, 92-93 (2010).

3

37.   Defendants assert that Wilson's patent licensing duties do not encompass enforcement of the patents-in-suit.

     On October 30, 2013, Rockstar created MobileStar, a wholly-owned subsidiary and Delaware limited liability corporation claiming a principal place of business in Plano, Texas.  Dean Decl. ¶ 5.  A day later, on October 31, 2013, Defendants filed suit in the Eastern District of Texas against ASUS, HTC, Huawei, LG, Pantech, Samsung, and ZTE, alleging each company infringes seven patents: U.S. Patent Nos. 6,037,937 (the '937 patent), 6,463,131 (the '131 patent), 6,765,591 (the '591 patent), 5,838,551 (the '551 patent), 6,128,298 (the '298 patent), 6,333,973 (the '973 patent), and 6,937,572 (the '572 patent). (the Halloween actions).  In each of the Halloween actions, Rockstar and MobileStar alleged infringement by "certain mobile communication devices having a version (or adaptation thereof) of Android operating system," which is developed by Google.  See Dean Decl., Exs. A-H.  Rockstar owns two of the seven patents-in-suit and transferred the remaining five patents to MobileStar shortly before filing litigation, but retained an exclusive license to those patents.  See Dean Decl. ¶¶ 5, 15, 24.

     On December 23, 2013, Google filed the present action in the Northern District of California.  In this action, Google seeks a declaration that its Android platform and products (the Nexus 5, Nexus 7, and Nexus 10) do not infringe the seven patents held by Defendants that were asserted in the Halloween actions.  See Docket No. 1.

     On December 31, 2013, Defendants responded with a New Year's Eve amendment to one of the Halloween actions to include

4

United States District Court
For the Northern District of California

1  allegations that Google infringes three of the asserted patents at
2  issue in this case: the '937, '131, and '591 patents.  Rockstar v.
3  Samsung, Case No. 13-0900 (E.D. Tex.), Docket No. 19.  Defendants
4  did not, however, assert that Google infringed the four additional
5  patents at issue in the Halloween actions and in this case: the
6  '551, '298, '973, and '572 patents.  See id.  On March 10, 2014,
7  Defendants moved to amend their complaint in the Texas case to
8  allege that Google infringed these four additional patents.  Case
9  No. 13-0900, Docket Nos. 45-46.

10                          LEGAL STANDARDS

11     Under Rule 12(b)(2) of the Federal Rules of Civil Procedure,
12 a defendant may move to dismiss for lack of personal jurisdiction.

13     In a declaratory action for non-infringement, because the
14 jurisdictional issue is intimately connected with substance of
15 patent laws, Federal Circuit law applies.  Avocent Huntsville
16 Corp. v. Aten Int'l Co., Ltd., 552 F.3d 1324, 1328 (Fed. Cir.
17 2008).

18     Where the court decides the personal jurisdiction question
19 based on affidavits and other written materials, and without an
20 evidentiary hearing, a plaintiff need only make a prima facie
21 showing that a defendant is subject to personal jurisdiction.
22 Nuance Commc'ns, Inc. v. Abbyy Software House, 626 F.3d 1222, 1231
23 (Fed. Cir. 2010); Electronics For Imaging, Inc. v. Coyle, 340 F.3d
24 1344, 1349 (Fed. Cir. 2003).  Uncontroverted allegations in the
25 complaint must be taken as true.  Id.  If both the plaintiff and
26 the defendant submit admissible evidence, conflicts in the
27 evidence must be resolved in the plaintiff's favor.  Trintec
28

**United States District Court**
For the Northern District of California

5

**A15**

United States District Court
For the Northern District of California

Indus., Inc. v. Pedre Promotional Products, Inc., 395 F.3d 1275, 1282 (Fed. Cir. 2005).

There are two independent limitations on a court's power to exercise personal jurisdiction over a non-resident defendant: the applicable state personal jurisdiction rule and constitutional principles of due process. Electronics For Imaging, Inc., 340 F.3d at 1349. Because California's jurisdictional statute is co-extensive with federal due process requirements, jurisdictional inquiries under state law and federal due process standards merge into one analysis. Id.

The "constitutional touchstone" for the exercise of personal jurisdiction "remains whether the defendant purposefully established minimum contacts" in the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985); Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Although the application of this doctrine has evolved to keep pace with the increasingly national and international nature of modern business affairs, the Supreme Court has repeatedly stressed that there must always be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Avocent Huntsville Corp., 552 F.3d at 1329 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the

6

A16

1  unilateral activity of another party or a third person." Id.

2  (quoting Burger King Corp., 471 U.S. at 475).

3      Personal jurisdiction may be either general or specific.

4  General jurisdiction exists when the defendant maintains

5  "continuous and systematic" contacts with the forum state, even if

6  the cause of action is unrelated to those contacts. Helicopteros

7  Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).

8  Specific jurisdiction is satisfied where the defendant has

9  "purposefully directed his activities at residents of the forum,

10  and the litigation results from alleged injuries that 'arise out

11  of or relate to' those activities." Burger King Corp., 471 U.S.

12  at 472.

13  I.   Personal Jurisdiction over Rockstar through MobileStar

14      As a preliminary matter, Defendants argue that jurisdiction

15  over Rockstar and MobileStar should be assessed independently

16  because they are separate corporate entities. Google disagrees,

17  contending that Rockstar's contacts should be imputed to

18  MobileStar.

19      The Court must begin from "the general rule that the

20  corporate entity should be recognized and upheld, unless specific,

21  unusual circumstances call for an exception." 3D Sys., Inc. v.

22  Aarotech Labs., Inc., 160 F.3d 1373, 1380 (Fed. Cir. 1998).  One

23  exception is where the parent and subsidiary are not really

24  separate entities and are alter egos of each other. Doe v. Unocal

25  Corp., 248 F.3d 915, 926 (9th Cir. 2001); see also Danjaq, S.A. v.

26  Pathe Commc'ns Corp., 979 F.2d 772, 775 (9th Cir. 1992) (finding

27  that many courts have discussed whether a parent's citizenship can

28  be imputed to the subsidiary and recognized that it can where the

United States District Court
For the Northern District of California

7

subsidiary is the alter ego of the parent). Courts have invoked this exception where the plaintiff makes a prima facie case that (1) there is a unity of interest and ownership such that the separate personalities of the two entities no longer exist and (2) failure to disregard the separate identities "would result in fraud or injustice." Doe, 248 F.3d at 926.

In a similar situation, the Federal Circuit found that the parent-subsidiary relationship between a parent company and its wholly-owned subsidiary holding company justified imputing the parent company's California contacts to the subsidiary. Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc., 142 F.3d 1266, 1271 (Fed. Cir. 1998). The court observed:

> Stripped to its essentials, CFM contends that a parent company can incorporate a holding company in another state, transfer its patents to the holding company, arrange to have those patents licensed back to itself by virtue of its complete control over the holding company, and threaten its competitors with infringement without fear of being a declaratory judgment defendant, save perhaps in the state of incorporation of the holding company. This argument qualifies for one of our "chutzpah" awards. See Refac Int'l, Ltd. v. Lotus Dev. Corp., 81 F.3d 1576, 1584, 38 USPQ2d 1665, 1671 (Fed. Cir. 1996); Checkpoint Sys., Inc. v. United States Int'l Trade Comm'n, 54 F.3d 756, 763 n. 7, 35 USPQ2d 1042, 1048 n.7 (Fed. Cir. 1995) (noting that "chutzpah" describes "the behavior of a person who kills his parents and pleads for the court's mercy on the ground of being an orphan").

Id. (reversing district court's finding that it lacked personal jurisdiction because of CFMT, the newly-formed subsidiary). With these observations in mind, the Federal Circuit determined that it would be "reasonable and fair" to find jurisdiction over both CFM and CFMT because of their parent-subsidiary relationship. Id. The court reasoned that, while a "patent holding subsidiary is a

8

legitimate creature . . . , it cannot fairly be used to insulate patent owners from defending declaratory judgment actions in those fora where its parent company operates under the patent and engages in activities sufficient to create personal jurisdiction and declaratory judgment jurisdiction."  Id.[2]

    The facts in this case are at least as strong as those in Dainippon.  As in Dainippon, MobileStar here had some contact with the forum state: it met with Google in California to attempt to negotiate a license.  See id. ("Moreover, CFMT's attempts to negotiation a sublicense with Dainippon in California further strengthen CFMT's contacts with that state.").  More fundamentally, as in Dainippon, the circumstances here strongly suggest that Rockstar formed MobileStar as a sham entity for the sole purpose of avoiding jurisdiction in all other fora except MobileStar's state of incorporation (Delaware) and claimed principal place of business (Texas).  A mere day before it initiated litigation against Google's customers, Rockstar freshly minted MobileStar, with no California contacts, and assigned the

---

    [2] Defendants initially attempted to argue that Dainippon's holding was based "first and foremost" on its determination "that the subsidiary itself had minimum contacts with the forum, and those contacts (not the parent's contacts) justified the imposition of personal jurisdiction," insinuating the rest was dicta.  Defendants' Reply at 3 (internal quotation marks and italics omitted).  However, Defendants later conceded that Dainippon stood for the proposition that one valid ground for setting aside corporate formalities for purposes of assessing the interests of fair play and substantial justice was if the defendants engaged in "a deliberate attempt to manipulate jurisdiction."  Id. at 4.

**United States District Court**
For the Northern District of California

9

asserted patents to that subsidiary.  Dean Decl. ¶ 15.  Other
evidence suggesting MobileStar maintains no independent identity
is the fact that all MobileStar employees also work for Rockstar.
MobileStar has three officers (President Afzal Dean, Vice
President Chad Hilyard, and Corporate Secretary Mike Dunleavy) and
one board member (Director of the Board John Veschi); all serve on
Rockstar's board as well.  Dean Decl. ¶ 10.  MobileStar
purportedly operates out of the same office suite listed for
Rockstar.  Dean Decl. ¶¶ 5, 15.  Although Rockstar asserts that
"there is no hint whatsoever of <u>any</u> manipulation" and that
"MobileStar was created for legitimate reasons having nothing to
do with personal jurisdiction," Rockstar does not actually provide
any evidence supporting this point.  Defendants' Reply at 4.
Because the evidence presented supports Google's allegation that
Rockstar created MobileStar solely to dodge jurisdiction, the
traditional notions of fair play and justice would not be offended
if the Court considers the two entities jointly for purposes of
jurisdiction and imputes Rockstar's contacts to the forum state to
MobileStar.[3]

---

[3] Cf. <u>In re Microsoft</u>, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011) (for purposes of a motion to transfer, ignoring the impact of litigation-driven incorporation under the laws of Texas, which occurred sixteen days before filing suit); <u>In re Zimmer Holdings, Inc.</u>, 609 F.3d at 1381 (rejecting connections to Texas as "recent, ephemeral, and an artifact of litigation").

II.  General Jurisdiction

General, or "all-purpose" personal jurisdiction, subjects a defendant to suit in a forum only where a defendant's contacts with that forum "are so continuous and systematic as to render them essentially at home in the forum State."  Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011)).  The "paradigm bases for general jurisdiction" for a corporation are its place of incorporation and principal place of business.  Id. at 760.

Both Rockstar and MobileStar are incorporated in Delaware and claim to have principal places of business in Plano, Texas.  Dean Decl. ¶ 5, 15.  Neither Defendant is licensed to do business in California, nor do they own real or personal property, pay taxes, maintain offices, or file lawsuits in California.  Dean Decl. ¶¶ 6-9, 16, 22-24, 29-33.

Google nevertheless contends that Rockstar has stepped in the shoes of its predecessor, Nortel, and assumed its jurisdictional position.[4]  Although Nortel was a Canadian company, it maintained

---

[4] See Doe, 248 F.3d at 926 (explaining requirements for alter ego theory and agency theory for imputing contacts of one corporation to another).  See also Katzir's Floor & Home Design, Inc. v. M-MLS.com, 394 F.3d 1143, 1150 (9th Cir. 2004) ("The general rule of successor liability is that a corporation that purchases all of the assets of another corporation is not liable for the former corporation's liabilities unless, among other theories, the purchasing corporation is a mere continuation of the selling corporation.").

**A21**

**United States District Court**
For the Northern District of California

its primary United States campus in Santa Clara and designated a

registered agent for service of process in California. See

Madigan Decl., Exs. 3, 27. Nortel routinely brought suits and

defended them in California. See, e.g., Times Networks, Inc. v.

Nortel Networks Corp., Case No. 06-00532 (N.D. Cal.) and Nortel

Networks Inc. v. State Bd. of Equalization, 191 Cal. App. 4th 1259

(2011).

Google does not allege that Rockstar maintained Nortel's

Santa Clara presence in California. Google contends instead that,

although the bulk of Rockstar's employees operate out of Canada,

Rockstar nevertheless pursues a significant patent licensing

business aimed at the technology industry in the Silicon Valley,

in California. As Rockstar has stated on many occasions to the

press and others, Rockstar is exclusively "a patent licensing

business" and operates by reverse-engineering products on the

market and proposing that the companies which offer those products

purchase licenses. Madigan Decl., Ex. 7, 13; Dean Decl. ¶¶ 18-21.

Rockstar does not currently sell any products; commercialization

of its significant patent portfolio is its only business. Because

the Silicon Valley technology industry is Rockstar's main target,

as acknowledged by Rockstar's CEO, Rockstar naturally would have

to come into constant contact with the forum state. Madigan

Decl., Exs. 16, 35. Rockstar confirmed that, as of May 2012, it

had "started negotiations with as many as 100 potential licensees"

and has since approached many more. Id., Exs. 7, 17. At least a

12

**A22**

couple of these meetings were in California. <u>See</u> Dean Decl. ¶ 18.

Rockstar has one employee or independent contractor in California,

Wilson, who contacts potential licensees in California. <u>See</u>

Madigan Decl. Ex. 17.

Google's showing is insufficient to render Defendants

"essentially at home" in California. Even if it is true that

Defendants engage in "continuous and systematic" business in the

forum state, that does not mean that Defendants' presence in the

forum state is so substantial that it should fairly be subject to

suit "on causes of action arising from dealings entirely distinct

from those activities." <u>Daimler AG</u>, 134 S. Ct. at 761.

## II. Specific Jurisdiction

Specific jurisdiction exists where the cause of action arises

out of the defendant's contacts with the forum state, even if

those contacts are isolated and sporadic. <u>Red Wing Shoe Co., Inc.</u>

<u>v. Hockerson-Halberstadt, Inc.</u>, 148 F.3d 1355, 1359 (Fed. Cir.

1998) (citing <u>Burger King Corp.</u>, 471 U.S. at 471-77). Even a

single act may support a finding of personal jurisdiction so long

as it creates a "substantial connection with the forum, as opposed

to an attenuated affiliation." <u>Id.</u> The Federal Circuit has

developed a three-factor test to determine whether specific

jurisdiction exists: "whether (1) the defendant purposefully

directed its activities at residents of the forum state, (2) the

claim arises out of or relates to the defendant's activities with

the forum state, and (3) assertion of personal jurisdiction is

**United States District Court**
For the Northern District of California

reasonable and fair." <u>Electronics For Imaging, Inc.</u>, 340 F.3d at 1350.

Here, Defendants sued seven Google customers, alleging that they infringed by making and selling "certain mobile communication devices having a version (or adaptation thereof) of Android operating system" which is developed by Google. <u>See</u> Dean Decl., Exs. A-H.  Both Defendants met with Google in California to discuss licensing of the patents-in-suit.  Rockstar also met in California with a few of the Google customers sued in the Halloween actions to discuss licensing of the patents-in-suit. These contacts with Google and its customers in California created a cloud of patent infringement charges over Google's Android platform.  Google's causes of action for declaratory judgment of non-infringement, which are intended to "clear the air of infringement charges" targeting Google's Android platform, "arise out of or relate to" Defendants' contacts with the forum.  <u>See</u> <u>Red Wing Shoe Co., Inc.</u>, 148 F.3d at 1360 (holding that "cease-and-desist letters are the cause of the entanglement and at least partially give rise to the plaintiff's action").

Defendants argue that imposing jurisdiction based on the act of sending cease-and-desist letters alone violates the principles of fair play and substantial justice.  <u>Id.</u>  The Federal Circuit has explained that exercising personal jurisdiction over a patentee based solely on the sending of cease-and-desist letters would be unfair under the second prong of the traditional due

United States District Court
For the Northern District of California

14

**United States District Court**
For the Northern District of California

process inquiry: "whether the maintenance of personal jurisdiction would comport with fair play and substantial justice." Id. at 1361 (quotation marks omitted). This is because due process "afford[s] the patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." Id. An offer to license may sometimes be "more closely akin to an offer for settlement of a disputed claim rather than an arms-length negotiation in anticipation of a long-term continuing business relationship," and, if so, by itself may be insufficient to justify exercising specific jurisdiction. Id. Accordingly, to find specific jurisdiction, the Federal Circuit has required that a showing that a defendant engaged in "other activities" in the forum state related to the action at hand. Id.; Avocent Huntsville Corp., 552 F.3d at 1334. These activities need not be limited to those directed at Google itself, but must be related in some way to the patents-in-suit. Avocent Huntsville Corp, 552 F.3d at 1334.

Courts have held that such "other activities" may include forming obligations with forum residents that relate to enforcement of the asserted patents. Some examples of "other activities" that courts have recognized include "initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or

15

regularly doing business in the forum." Id.[5]  A review of Federal

Circuit case law reveals that the relationship must extend beyond

the mere payment of royalties or cross-licensing payments, "such

as granting both parties the right to litigate infringement cases

or granting the licensor the right to exercise control over the

licensee's sales or marketing activities." Breckenridge Pharm.,

Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1366 (Fed. Cir.

2006).  The defendants must create "continuing obligations between

themselves and residents of the forum," forming a "substantial

connection" that proximately results from the defendants' own

actions such that it would not be "unreasonable to require

defendants to submit to the burdens of litigation in that forum as

well."  Electronics For Imaging, Inc., 340 F.3d at 1350.

---

[5] See Campbell Pet Co. v. Miale, 542 F.3d 879, 886 (Fed. Cir. 2008) (finding jurisdiction over a patentee who conducted extra-judicial patent enforcement by enlisting a third party in the forum to remove defendant's products from a trade show); Genetic Implant Sys., Inc. v. Core-Vent Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997) (holding that specific jurisdiction existed over patentee because it had appointed an in-state distributor to sell a product covered by the asserted patent, which was a business relationship "analogous to a grant of a patent license" and created obligations to sue third-party infringers); Akro Corp. v. Luker, 45 F.3d 1541, 1548-49 (Fed. Cir. 1995) (because defendant had entered into an exclusive licensing agreement with one of the alleged infringer's competitors, which meant that defendant had "obligations . . . to defend and pursue any infringement" against the patent, specific jurisdiction was proper); SRAM Corp. v. Sunrace Roots Enter. Co., Ltd., 390 F. Supp. 2d 781, 787 (N.D. Ill. 2005) (specific jurisdiction was proper where defendant had "purposefully directed its activities" at residents of the forum by marketing a product that directly competed with the alleged infringer).

Google contends that Defendants have accepted substantial obligations to Apple, a forum resident, which require Defendants "to defend and pursue any infringement against" their patents. Akro Corp., 45 F.3d at 1543. Google alleges that Apple is a majority shareholder of Defendants and exerts substantial control over them, and as a result Defendants are obliged to act on Apple's behalf in a campaign to attack Google's Android platform.[6]

In support of this allegation, Google submits strong evidence that Apple is indeed the majority shareholder of Defendants based on Apple's majority investment in Rockstar's predecessor entity, Rockstar Bidco.[7] Currently, Rockstar is a Delaware limited partnership which lists "Rockstar Consortium LLC" located in New York as general partner. Id., Exs. 32-33; Dean Decl. ¶ 15. But Apple contributed $2.6 billion, or fifty-eight percent of the $4.5 billion total investment in Rockstar Bidco. Madigan Decl., Ex. 9 at 34. Although Rockstar Bidco reorganized itself to become

---

[6] Defendants contend that Google has not proven that alter ego or agency theories apply, and thus Apple's contacts with the forum cannot be imputed to Defendants. See Defendants' Reply at 11. Defendants misunderstand Google's argument. Google does not seek to impute to Defendants Apple's contacts with the forum state, but instead argues that Defendants have undertaken a substantial obligation to Apple related to the asserted patents that makes it reasonable to impose specific jurisdiction.

[7] As previously noted, Rockstar wholly owns MobileStar and the Court considers the two entities jointly for purposes of jurisdiction because it is likely that MobileStar was created solely for litigation purposes.

17

Rockstar, it does not appear that any ownership interests changed, nor do Defendants assert otherwise.

Even if Apple is a majority shareholder of Rockstar, if Defendants were able to demonstrate that Apple is a mere passive shareholder and takes no part in patent assertion strategy, then the relationship between Apple and Defendants might not be sufficient to uphold specific jurisdiction. <u>Cf.</u> <u>Breckenridge Pharm., Inc.</u>, 444 F.3d at 1366. Google alleges that Apple's role extends beyond the mere receipt of profits. Rockstar's CEO Veschi stated that he does not talk to its shareholders about potential licensing partners or infringement suits, but admitted that he has to show them "progress and that real work is being done." Madigan Decl., Ex. 12 at 4-5. Veschi holds periodic calls and meetings with the owners, primarily with their intellectual property departments, and Veschi acknowledges that they "work well together." <u>Id.</u> at 5. Although Veschi states they avoid talking about details, it does appear at least telling that Veschi speaks directly and periodically with the owners' intellectual property departments to demonstrate that "work is being done." <u>Id.</u> at 4-5.

Google demonstrates a direct link between Apple's unique business interests, separate and apart from mere profitmaking, and Defendants' actions against Google and its customers. Google and

**A28**

Apple's rivalry in the smartphone industry is well-documented.[8]
Apple's founder stated that he viewed Android as a "rip off" of
iPhone features and intended to "destroy" Android by launching a
"thermonuclear war." Id., Ex. 31. Defendants' litigation
strategy of suing Google's customers in the Halloween actions is
consistent with Apple's particular business interests. In suing
the Halloween action defendants, Defendants here limited their
infringement claims to Android-operating devices only, even where
they asserted a hardware-based patent. See, e.g., Dean Decl.,
Ex. A and the '551 patent. This "scare the customer and run"
tactic advances Apple's interest in interfering with Google's
Android business. See Campbell, 542 F.3d at 887 (finding
jurisdiction where the patentee "took steps to interfere with the
plaintiff's business").

In sum, with conflicts in the allegations and evidence
resolved in its favor, Google has shown that it is likely that
Defendants have created continuing obligations with a forum
resident to marshal the asserted patents such that it would not be
unreasonable to require Defendants to submit to the burdens of

---

[8] See, e.g., Madigan Decl., Ex. 24 (Rockstar's "stockpile was
finally used for what pretty much everyone suspected it would be
used for -- launching an all-out patent attack on Google and
Android"); Ex. 25 ("This is an all out assault on Google and the
Android smartphone ecosystem and it would be fair to say that most
experts expected those patents would rear their ugly head sometime
in the future"); Ex. 26 (new attention focused on Rockstar
"largely because it gives the appearance that three leading
competitors to Android are teaming up against it"); Ex. 27
(further detailing Apple's anti-Android litigation campaign).

litigation in this forum.  Electronics For Imaging, Inc., 340 F.3d at 1350.  Defendants have purposefully directed activities to residents of this forum in a way which relates materially to the enforcement or defense of the patent, which is sufficient to establish specific jurisdiction.  Avocent Huntsville Corp., 552 F.3d at 1338.[9]

III. Jurisdiction under Declaratory Judgment Act

The Declaratory Judgment Act provides, "In a case of actual controversy within its jurisdiction, any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  The declaratory judgment plaintiff must establish that the "facts alleged under all the circumstances show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Micron Tech., Inc. v. Mosaid Technologies, Inc., 518 F.3d 897, 901 (Fed. Cir. 2008) (citing MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126 (2007) (holding that there was a real and substantial controversy based on threatening letters and public statements showing an "intent to continue an aggressive litigation strategy")).

---

[9] Because the Court finds personal jurisdiction over Defendants is proper, venue is also proper.  Trintech Indus., 395 F.3d at 1280 ("Venue in a patent action against a corporate defendant exists wherever there is personal jurisdiction").

United States District Court
For the Northern District of California

Even when declaratory judgment jurisdiction is present, courts have some discretion to decline to exercise that jurisdiction.  Wilton v. Seven Falls Co., 515 U.S. 277, 289-90 (1995).  In order to decide whether to exercise jurisdiction under the Declaratory Judgment Act, the court "must determine whether hearing the case would serve the objectives for which the Declaratory Judgment Act was created."  Capo, Inc. v. Dioptics Med. Products, Inc., 387 F.3d 1352, 1355 (Fed. Cir. 2004).  When the objectives of the Declaratory Judgment Act are served by the action, dismissal is rarely proper.  Id.  "There must be well-founded reasons for declining to entertain a declaratory judgment action."  Id.

The present suit serves the purposes of the Declaratory Judgment Act, which "in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights."  Micron Tech., Inc., 518 F.3d at 902.  A real and substantial controversy existed when Google filed suit. Defendants had sued a number of Google's customers, based in part

**A31**

on their use of the Android platform developed by Google.[10]
Defendants did not, however, name Google as a defendant.  This
tactic of targeting the customers instead of the manufacturer
"infects the competitive environment of the business community
with uncertainty and insecurity." Electronics for Imaging, Inc.
v. Coyle, 394 F.3d 1341, 1346 (Fed. Cir. 2005).  In response to
the uncertainty caused by Defendants' actions, Google filed this
declaratory judgment action to "clear the air of infringement
charges." Avocent Huntsville Corp., 552 F.3d at 1329.  That
uncertainty still exists in part because, although Defendants
later amended one of the Halloween actions to implicate Google
directly, they accused Google of infringing only three of the
seven of the patents at issue here.  Case No. 13-0900, Docket
No. 19.  Although Defendants recently sought to include the final
four other patents in the Texas case, leave to amend has not yet

---

[10] Defendants filed a Statement of Recent Decision calling the
Court's attention to Microsoft Corp. v. DataTern, Inc., 2013-1184,
2014 WL 1327923 (Fed. Cir. Apr. 4, 2014).  The Federal Circuit
noted that, although suits against customers do not "automatically
give rise to a case or controversy regarding induced
infringement," there is a case or controversy if "there is a
controversy between the patentee and the supplier as to the
supplier's liability for induced or contributory infringement
based on the alleged acts of direct infringement by its
customers." Id. at *2-3.  The vast majority of the claims brought
in the Halloween actions appear to be targeted specifically at
Android features; the exception is the '551 patent, with which it
is not clear if Android is specifically involved.  It is also not
clear if Defendants approached Google to license the '551 patent.
See id. at *2.  Because the DataTern court had the benefit of
claim charts to discern the details of the patentee's infringement
theories, the Court may revisit the inclusion of the '551 patent
at a later date.

been granted.  Case No. 13-0900, Docket Nos. 45-46.  Because the
patent owners failed to "grasp the nettle and sue," Google was
justified in bringing the present action.  <u>Electronics for
Imaging, Inc.</u>, 394 F.3d at 1346.

IV.   Motion to Transfer

    A.   First-to-File Rule

    When cases between the same parties raising the same issues
are pending in two or more federal districts, the general rule is
to favor the forum of the first-filed action, regardless of
whether it is a declaratory judgment action.  <u>Micron Tech., Inc.</u>,
518 F.3d at 904.  The court of the actual first-filed case should
rule on motions to dismiss or transfer based on exceptions to the
first-to-file rule or on the convenience factors.  <u>See id.</u>  The
parties dispute which is the first-filed action.  Google argues
that the first-filed action is the present suit, which was filed
before Google faced charges in the Eastern District of Texas due
to Defendants' New Year's Eve amendment.  Defendants argue that
the Halloween actions themselves constituted the first-filed
suits.  Defendants' Motion to Dismiss at 5, 19-24.  Although the
Halloween actions did not name Google specifically, Defendants
contend that they should be considered first-filed suits against
Google because they involved "substantially the same" parties as
those implicated here.  <u>Id.</u> (citing <u>Futurewei Techs., Inc. v.
Acacia Research Corp</u>, 737 F.3d 704, 706 (Fed. Cir. 2013)).
However, the present situation is not equivalent to the

United States District Court
For the Northern District of California

23

"substantially similar" parties that were implicated in <u>Futurewei</u>, which were a patent owner, its exclusive licensee, and the licensee's wholly-owned subsidiary/assignee. <u>Id.</u> at 705-06.  By contrast, the relationship between Google and the Halloween defendants is one of manufacturer and customer.  Google and the Halloween defendants are not in privity.  <u>Cf.</u> <u>Microchip Tech, Inc. v. United Module Corp.</u>, 2011 WL 2669627, at *3 (N.D. Cal.) ("similar" parties were parent and its wholly-owned subsidiary).

Even if the parties were substantially similar in the Halloween actions and this one, the customer-suit exception to the first-to-file rule would apply.  <u>Codex Corp v. Milgo Elec. Corp</u>, 553 F.2d 735, 737 (1st Cir. 1977) ("an exception to the first-filed rule has developed in patent litigation where the earlier action is an infringement suit against a mere customer and the later suit is a declaratory judgment action brought by the manufacturer of the accused devices").  Because the determination of the infringement issues here would likely be dispositive of the other cases, and the manufacturer presumably has a greater interest in defending against charges of patent infringement than the customers, the present suit takes precedence.  <u>Kahn v. Gen. Motors Corp.</u>, 889 F.2d 1078, 1081 (Fed. Cir. 1989); <u>Cf.</u> <u>ContentGuard Holdings, Inc. v. Google, Inc.</u>, Case No. 14-0061 (E.D. Tex.), Docket No. 37, at 6.

B.    Convenience Factors

The Court could make an exception to the general rule giving

preference the first-filed case if doing so would be "in the interest of justice or expediency, as in any issue of choice of forum." Micron Tech., Inc., 518 F.3d at 904. To resolve disputes of "competing forum interests" between accused infringers and patent holders, the court may consider the "convenience factors" under the transfer analysis of 28 U.S.C. § 1404(a), including: the convenience and availability of witnesses, the absence of jurisdiction over all necessary or desirable parties, the possibility of consolidation with related litigation, and considerations relating to the interests of justice. Id. at 902-05. See Reflex Packaging, Inc. v. Audio Video Color Corp., 2013 WL 5568345, at *2 (N.D. Cal.) (listing additional transfer factors).

   1.   Convenience and availability of witnesses

The convenience and availability of witnesses is "probably the single most important factor" in the transfer analysis. In re Genentech, Inc., 566 F.3d 1338, 1343 (Fed. Cir. 2009). This factor favors California because Google's Android products, the target of this infringement action, were designed and created here. Many of the witnesses who can testify to the design and development of the accused Android platform's features reside near Google's headquarters in Mountain View, California. Dubey Decl. ¶¶ 3-8. Other witnesses, such as the inventors of the patents-in-suit, are likely to be in Canada. Defendants do not name any witnesses in Texas essential to the suit.

25

United States District Court
For the Northern District of California

2.  Jurisdiction over parties to this action and
    possibility of consolidation with related
    litigation

Defendants argue that this Court lacks jurisdiction over some of the customer defendants to the Halloween actions in Texas. Defendants contend those customers necessarily would be indispensable parties to this litigation because their rights in the patents-in-suit are at play.  However, those parties are not essential to resolution of claims between Defendants and Google. It cannot be said that any customer who uses the technology at issue is an indispensable party.

The Halloween actions might not and need not be transferred here.[11]  They might be stayed in Texas and be reopened upon completion of this suit, which likely will resolve some of the infringement issues there.  If the Texas actions are transferred here, they can be consolidated with this case at least for pretrial purposes.

3.  Other factors

Other factors that may be considered include: the plaintiff's choice of forum, the convenience of the parties, the ease of access to the evidence, the familiarity of each forum with the applicable law, the local interest in the controversy, the

---

[11] In each of the remaining Halloween actions, the defendant has filed a motion to stay or, in the alternative, to transfer the case to this district.  See Docket Nos. 46, 48, 50-51, 55.

26

1     relative court congestion, and the interests of justice.  <u>Reflex</u>

2     <u>Packaging, Inc.</u>, 2013 WL 5568345, at *2.

3        Defendants argue that they are the true plaintiffs and

4     accordingly, their choice of forum should take precedence.  The

5     Court finds this factor at best to favor Defendants only slightly

6     because each side accuses the other of forum shopping.  Indeed,

7     Defendants have not identified any witnesses residing in Texas,

8     their primary operations and headquarters are in Canada, and they

9     admit that many of the inventors of the patents-in-suit were

10    listed at least years ago as being from Canada.  Defendants'

11    argument of their own convenience is similarly attenuated because,

12    again, their operations appear to be based in Canada, not Texas.

13

14       The Northern District of California has the greater interest

15    in this litigation because the claims here will "call into

16    question the work and reputation of several individuals residing

17    in or conducting business in this community."  <u>In re Hoffman-La</u>

18    <u>Roche</u>, 587 F.3d 1333, 1336 (Fed. Cir. 2009).  Courts in the

19    Eastern District of Texas have recognized that the "Northern

20    District of California has an interest in protecting intellectual

21    property rights that stem from research and development in Silicon

22    Valley."  <u>Affinity Labs of Texas v. Samsung Elecs. Co., Ltd.</u>, 2013

23    WL 5508122, at *3 (E.D. Tex.).  Although Defendants claim to have

24    substantial ties to Texas, their headquarters appear to be in

25

26    Canada.  The interest of the Eastern District of Texas in this

27

28

**United States District Court**
For the Northern District of California

27

controversy is therefore outweighed by the compelling interests in California.

    The remaining factors are either neutral or favor Google. Because Google, the accused infringer, resides in California, much of the evidence is here.  Some of the evidence may be in Canada or other states; however, that does not make Texas the more convenient forum.  Each forum is familiar with patent law, and both have similar court congestion and time to trial.  All of the cases are in early stages.

    On balance, the factors do not weigh in favor of transferring the action to the Eastern District of Texas.

                         CONCLUSION

    The motion to dismiss or transfer is DENIED.

    IT IS SO ORDERED.

Dated: 04/17/2014

_____
CLAUDIA WILKEN
United States District Judge

28

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHOLOGIES, LLC, | § § § § |
| Plaintiff, | § § CASE NO. 2:13-CV-00894-JRG |
| v. | § § **LEAD CASE** |
| SAMSUNG ELECTRONICS CO., LTD., et al., | § § CASE NO. 2:13-CV-00900-JRG § |
| Defendants. | § **MEMBER CASE** § |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Google, Inc.'s ("Google") and Samsung Electronics Co., Ltd.'s, Samsung Electronics America, Inc.'s, and Samsung Telecommunications America, LLC's (collectively, "Samsung") Motion to Stay or, in the Alternative, to Transfer to the Northern District of California (Dkt. No. 52), filed March 21, 2014. For the reasons set forth below, the Court finds that the motion should be **DENIED**.

## I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Rockstar Consortium US LP, Inc. and Mobilestar Technologies, LLC are entities arising out of the demise of Nortel, a Canadian telecommunications company with a substantial patent portfolio. When Nortel confronted bankruptcy in 2011, it held an auction for its patents. Five major technology companies—Apple, Blackberry, Ericsson, Microsoft, and Sony—pooled their resources into Rockstar Bidco LP for the purpose of bidding on the Nortel patent portfolio (Dkt. No. 61-4). Rockstar Bidco LP outbid Google for the patents. *Id.* Rockstar

1

**A39**

Bidco LP then transferred the patents in suit here to the Rockstar Consortium US LP, a Delaware limited partnership with its headquarters in Plano, Texas and one of the plaintiffs in this case. *Id.* Rockstar Consortium US LP subsequently created a wholly-owned subsidiary, MobileStar Technologies, LLC, to which it assigned five of the seven patents-in-suit (Dkt. No. 61-7). Meanwhile, Rockstar Consortium Inc. was formed as a vehicle to hire certain of Nortel's former employees. *Id.* Rockstar Consortium US LP contracts with Rockstar Consortium, Inc. for "intellectual-property-support services." *Id.*

Rockstar Consortium US LP, Inc. and Mobilestar Technologies, LLC (hereinafter, collectively, "Rockstar") filed this suit against Samsung on October 31, 2013, alleging that Samsung infringes seven of Rockstar's patents, accusing certain mobile phones using a version of Google's Android operating system (Dkt. No. 1). On the same day, Rockstar separately sued six other mobile phone manufacturers, again accusing Android-based phones.

On December 23, 2013, Google filed an action for declaratory relief in the United States Court for the Northern District of California (NDCA), seeking a judgment that the Android operating system does not infringe the patents at issue in this case. *Google Inc. v. Rockstar Consortium U.S. LP*, No. C-13-5933-CW (Dkt. No. 1). On December 31, 2013, Rockstar amended its complaint in this Court, accusing Google of violating three of the seven patents in suit (Dkt. No. 19). Rockstar has since requested leave to file a Second Amended Complaint accusing Google of infringing all seven of the patents in suit (Dkt. No. 45). On April 17th, 2014, the NDCA issued an opinion denying Rockstar's motion to dismiss, finding that the California action was the first filed between Rockstar and Google (5933 Dkt. No. 58).

In this motion, Google asks the Court to stay the case pending resolution of the NDCA suit. In the alternative, Google asks the Court to transfer this case to the NDCA.

2

## II.  LEGAL STANDARDS

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). In deciding whether to stay litigation, courts typically consider "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Id.*

When cases between the same parties present the same issues for resolution, the general rule favors the first-filed action. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). However, "trial courts have discretion to make exceptions to this general rule in the interest of justice or expediency . . . . These exceptions are not rare." *Id.* Reasons such as "the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest" may trump the general first-filed rule. *Genentech, Inc. v. Eli Lilly 7 Co.*, 998 F.2d 931, 937-39 (Fed. Cir. 1998).

28 U.S.C. section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*).

Once that threshold is met, the movant has the burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Nintendo*, 589 F.3d 1194,

3

**A41**

1200 (Fed. Cir. 2009); *In re TS Tech*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). In this regard, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d 1319. The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203. The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203. Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15.

## III. ANALYSIS

Defendants request a stay of these proceedings as their preferred relief. Because the considerations involved in a decision to stay closely mirror those involved in a decision to transfer, however, the Court will combine its discussion of these issues.

### A. Availability of the Transferee Venue

The parties do not appear to dispute that this suit could originally have been brought in the Northern District of California, and this Court agrees that the case could have been originally brought in that district. *See In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).

4

B. Private Interest Factors

*1. Relative Ease of Access to Sources of Proof*

It is likely that the bulk of the relevant evidence in this action will come from Google. *See In re Genentech*, 566 F.3d at 1345. Google avers that "all relevant documants and evidence are [sic] accessible from Google's headquarters in the Northern District," but is pointedly silent on the physical location where said documents are stored (Dkt. No. 52-29). Samsung, in contrast, maintains a US headquarters in Richardson, Texas—within the Eastern District of Texas (Dkt. No. 62-7). Samsung also maintains a laboratory in Dallas, Texas; the Dallas office appears to be significantly involved in the development of the accused products (Dkt. No. 62-9). Moreover, Rockstar's documentary evidence relating to the patents-in-suit is stored at its Plano, TX headquarters—also within the Eastern District (Dkt. Nos. 61-4, 61-7). Though Google suggests that this evidence was transported to the Eastern District explicitly to game the Court's transfer analysis, the Court finds that such a conclusion is unwarranted given the evidence presented.

The evidence supports the conclusion that a substantial body of relevant evidence exists in or near the Eastern District of Texas. In contrast, it is unclear whether and how much relevant information actually exists within the Northern District of California. The Court thus finds that this factor weighs against transfer. The Court notes, however, that given the ease in the modern era of transferring electronic data from one place to another, this factor is not dominant in its ultimate decision.

*2. Availability of Compulsory Process*

Under Federal Rule of Civil Procedure 45 (as recently amended), this Court may enforce a subpoena issued to any nonparty witness in the State of Texas to appear at trial, provided the party does not incur substantial expense. Fed. R. Civ. P. 45(c)(1)(B). Similarly, the Court may

5

**A43**

enforce any subpoena for a deposition to be taken within its boundaries, provided that the deposition is taken no more than 100 miles from a location where the person resides, is employed, or regularly transacts business in person. *See id.* at (a)(2), (c)(1)(A), (d)(3)(a); *Ingeniador, LLC v. Adobe Systems Inc.*, 2014 WL 105106, No. 2:12-cv-805-JRG (E.D. Tex. Jan. 9, 2014). Rule 45, however, makes compulsory process for deposition effectively nationwide. Moreover, party witnesses do not require compulsory process for trial and are not given much weight in this factor. *See Ingeniador*, *supra*. Rather, the focus of this factor is on witnesses for whom compulsory process to attend trial might be necessary.

Google suggests that "former employees of Google and Andrioid Inc. remain heavily concentrated in the Northern District. At least one named inventor resides in the Northern District . . . and dozens of relevant prior artists of record live in the Northern District" (Dkt. No. 52, at 11). They also suggest that employees of Apple, one of Rockstar's corporate owners, may be compelled to testify in the Northern District.

Google does not, however, identify any former employees who are expected to testify at trial. Nor does this Court give particular credence to the assertion that prior artists will be called to testify; this Court has previously noted that "inventors of prior art rarely, if ever, actually testify at trial." *PersonalWeb Techs., LLC v. Target Brands, Inc.*, No. 6:11-cv-655-LED, Dkt. No. 74, at 15 n.13 (E.D. Tex. Mar. 21, 2013). Finally, though the Court views Google's asserted interest in Apple's testimony with some skepticism, it notes that other Rockstar parents—notably Ericsson and Blackberry—maintain U.S. headquarters in Texas (Dkt. Nos. 63-17, 63-18).

In contrast, Rockstar specifically identifies two prosecuting attorneys, two former Nortel employees, and one former Samsung employee in or near the Eastern District of Texas whom it suggests might be called to testify (Dkt. No. 61, at 11). It also suggests that Samsung customers

such as AT&T and Verizon might be called to prove damages. *Id.* The Court is not convinced that any of these witnesses will likely be called to testify, but their appearance in the case is certainly plausible.

Weighing all considerations of available compulsory process, the Court finds that this factor is neutral. One inventor's presence in the Northern District of California weighs in favor of transfer, but is counterbalanced by the presence of several potential nonparty witnesses in Texas.

### 3. *Cost of Attendance for Willing Witnesses*

A critical factor in this Court's analysis of this case is the cost of attendance for willing witnesses. As noted above, Google's headquarters is in Mountain View, California. Many of the Google employees who work on the Android operating system are located in or near the Northern District of California (Dkt. No. 52-29). Samsung is a Korean entity with its U.S. headquarters in the Eastern District of Texas; moreover, Samsung maintains a Dallas office that appears to do substantial work on its Android-based products (Dkt. No. 62-7, 62-9). Rockstar's headquarters is in Plano, Texas, and Rockstar has identified several potential witnesses who work at its Plano office.

Google employees from northern California would face substantial costs in traveling to the Eastern District of Texas for trial. However, if the court were to transfer this case, roughly equivalent costs would be imposed on Rockstar's witnesses, and also (potentially) some Samsung witnesses. Samsung witnesses located in Korea, by contrast, will be subjected to substantial costs in either venue.

Transferring this case would, at best, merely redistribute the inconvenience of travel among the parties; at worst, a transfer might substantially increase the cost of attendance for

willing witnesses. *Cf. Thomas Swan & Co., Ltd. v. Finisar Corp.*, 2014 WL 47343, No. 2:13-cv-178-JRG (E.D. Tex. Jan. 6, 2014). Having considered the evidence, the Court finds that this factor weighs slightly against transfer.

### 4. Other Practical Problems

In this case, where multiple and parallel litigations in two different jurisdictions are possible, considerations of judicial economy bear heavily upon the Court's transfer analysis. *See In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009).

Google argues that its suit against Rockstar in California presents identical issues among identical parties, and that the Court should stay or transfer this litigation under the first-filed rule. It also argues that, even if this litigation is the first-filed (because of Rockstar's October complaint against Samsung and subsequent addition of Google as a defendant), the Court should stay or transfer this case because Rockstar's Texas suits are essentially "customer suits," whose major issues will be resolved in the California declaratory judgment action.

The Court need not resolve the formalistic question of whether Rockstar's October complaint makes this suit the first-filed case. The decision to stay or transfer a case is contextual and multifaceted, and the Court may give weight to considerations beyond the simple race to the courthouse. *See Micron Tech.*, 518 F.3d at 904. This is particularly so in this case, where the merits of the "first filed" designation are by no means clear. The considerations of judicial economy that underlie the general first-filed rule, in this case, weigh against a transfer or stay.

First, the Court notes that there are six Rockstar litigations currently proceeding in the Eastern District of Texas, each suit alleging violations of the same patents. The Court has already consolidated these cases for all pre-trial purposes except venue (Dkt. No. 51). These cases will present common issues of claim construction and damages, and (most likely) validity. Moreover,

now that Google is a party to this litigation, Google will have every opportunity to participate fully in these proceedings.[1] Considerations of judicial economy weigh strongly in favor of consolidating all cases on these patents in the Eastern District of Texas, if possible.

Second, the Court does not expect the current California litigation to dispose of key issues in this case and the related Rockstar cases. *See Spread Spectrum Screening LLC v. Eastman Kodak*, 657 F/3d 1349, 1358 (Fed. Cir. 2011). Though the patents-in-suit in the Texas cases are the same, the suits' accused products are importantly different. Though each of the accused products uses some version of Android, a product driven primarily by Google, each defendant mobile phone manufacturer modifies and customizes the Android system to its own particular purposes (Dkt. Nos. 63-6, 63-11). It is by no means clear, then, that resolving infringement issues as to Android *proper* will resolve issues relating to other manufacturers' various *implementations* of the Android system.

The Texas actions also present issues relating to each phone manufacturer's devices and hardware, which the California litigation does not. One of the patents-in-suit claims only hardware (Dkt. No. 63-10). Rockstar alleges that the other patents-in-suit cover the interaction of the parties' Android implementations with hardware (Dkt. No. 61, at 4). Thus, only if the patents are *invalidated* completely in the California court will major issues in the Texas cases be resolved.

The Court finds that this factor weighs heavily against transfer. This factor also weighs against a stay of proceedings.

C. <u>Public Interest Factors</u>

---

[1] An Order of this Court to be released contemporaneously grants Rockstar leave to amend its complaint to assert all seven patents-in-suit against Google.

9

**A47**

*1. Local Interest*

Google argues that "[t]he Northern District of California has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley" (Dkt. No. 52, at 15) (quoting *Affinity Labs of Tex. v. Samsung Elecs. Co., Ltd.*, 2013 WL 5508122, No. 1:12-cv-557-RC (E.D. Tex. Sept. 18, 2013). The Court has previously been highly skeptical of arguments that a particular jurisdiction has a "local interest" that amounts to a bias in its jury pool.  *See Ingeniador*, 2014 WL 105106, at *3-4. A predisposition toward one party, independent of the merits of the case, cannot be the kind of "local interest" cognized by the federal rules, and this Court gives this consideration no weight in its analysis. Also, the products here accused are so ubiquitous throughout the nation that no single community can establish an exceptional link that rightly makes any venue preferable to any other. The Court finds that this factor is neutral.

*2. Other Public Interest Factors*

Both parties agree that other public interest factors are neutral. The Court sees no reason to disagree with this conclusion.

## IV.   CONCLUSION

The Court finds that a stay of proceedings would not serve the interests of justice, because major issues in this case and other pending cases will likely remain even after the California litigation is resolved. The Court also finds that the Northern District of California is not clearly a more convenient venue for this case.

Having considered the matter carefully, the Court finds that Defendants' motion (Dkt. No. 52) should be and hereby is **DENIED**.

**A48**

**So ORDERED and SIGNED this 1st day of July, 2014.**


RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

# CERTIFICATE OF SERVICE

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**
Misc. No. _____
--------------------------------------------------------------------------------
IN RE LG ELECTRONICS, INC., LG ELECTRONICS U.S.A., INC., and LG
ELECTRONICS MOBILECOMM USA INC.,
                              *Petitioners*.
--------------------------------------------------------------------------------

I, Lindsay C. Cloonan, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by Greeenberg Traurig, LLP, attorneys for Petitioners to print this document.  I am an employee of Counsel Press.

On the **21st Day of August, 2014**, I served the within **Petition for Writ of Mandamus** upon:

Mike McKool *(via Fed Ex)*
mmckool@McKoolSmith.com
Douglas A. Cawley
dcawley@McKoolSmith.com
Ted Stevenson III
tstevenson@mckoolsmith.com
David Sochia
dsochia@McKoolSmith.com
Ryan Hargrave
rhargrave@McKoolSmith.com
Nicholas M. Mathews
nmathews@McKoolSmith.com
MCKOOL SMITH, P.C.
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Jennifer Leigh Truelove
jtruelove@McKoolSmith.com
Samuel Franklin Baxter
sbaxter@McKoolSmith.com
MCKOOL SMITH, P.C.
P.O. Box O
104 East Houston St., Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Telecopier: (903) 923-9099

Joshua W. Budwin
jbudwin@mckoolsmith.com
MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

Attorneys for Rockstar Consortium US LP and MobileStar Techs. LLC

Harold H. Davis, Jr. *(via Fed Ex)*
harold.davis@klgates.com
Irene I. Yang
irene.yang@klgates.com
K&L GATES LLP
Four Embarcadero, Suite 1200
San Francisco, California 94111
(415) 882-8200
(415) 882-8220 facsimile

Jennifer Klein Ayers
jennifer.ayers@klgates.com
K&L GATES LLP
1717 Main Street, Suite 2800
Dallas, Texas 75201
(214) 939-5500
(214) 939-5849 facsimile

Jeffrey M. Ratinoff
jeffrey.ratnoff@klgates.com
K&L GATES LLP
630 Hansen Way
Palo Alto, California 94304
(650) 798-6700
(650) 798-6701 facsimile

<u>Attorneys for Defendants ASUStek Computer, Inc.
and ASUS Computer International</u>

Alexas D. Skucas *(via Fed Ex)*
askucas@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 556-2100
(212) 556-2222 facsimile
Steven T. Snyder
ssnyder@kslaw.com

Anup M. Shah
ashah@kslaw.com
KING & SPALDING LLP
100 North Tryon Street, Ste. 3900
Charlotte, North Carolina 28202
(704) 503-2600
(704) 503-2622 facsimile

Everett Upshaw
everettupshaw@everettupshaw.com
David A. Bailey
davidbailey@everettupshaw.com
LAW OFFICE OF EVERETT
UPSHAW, PLLC
811 South Central Expressway
Suite 307
Richardson, Texas 75080
(972) 372-4235
(214) 865-6086 facsimile

<u>Attorneys for Defendants ZTE (USA) Inc. and ZTE Corp.</u>

W. Barton Rankin *(via Fed Ex)*
bart.rankin@bakermckenzie.com
BAKER & MCKENZIE LLP
2300 Trammel Crow Center
2001 Ross Avenue, Suite 2300
Dallas, Texas 75201
(214) 978-3000
(214) 978-9099 facsimile

D. James Pak
d.james.pak@bakermckenzie.com
BAKER & MCKENZIE LLP
Two Embarcadero Center, 11th Floor
San Francisco, California 94111
(415) 576-3000
(415) 576-3099 facsimile

Attorneys for Defendants Pantech Co., Ltd., and Pantech Wireless, Inc

Kathleen M. Sullivan *(via FedEx)*
Patrick D. Curran
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
(212) 849-7100 facsimile

Charles K. Verhoeven
Sean S. Pak
Amy H. Candido
Matthew S. Warren
Kristin J. Madigan
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
415-875-6600
415-875-6700 facsimile

Attorneys for Defendant Google, Inc.

Charles K. Verhoeven *(via FedEx)*
Sean S. Pak
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
415-875-6600
415-875-6700 facsimile
Kevin P.B. Johnson

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
(650) 801-5100 facsimile

Joseph Milowic III
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
(212) 849-7100 facsimile

Eugene Y. Mar
Erik C. Olson
Farella Braun & Martel LLP
235 Montgomery St, 17th Floor
San Francisco, CA 94104
415/954-4400
415/954-4480 facsimile

Attorneys for Defendants' Samsung Electronics Co., Ltd., Samsung Electronics
America, Inc., and Samsung Telecommunications America, LLC

Michael J. Bettinger *(via FedEx)*
mike.bettinger@klgates.com
Curt Holbreich
curt.holbreich@klgates.com
Irene I Yang
irene.yang@klgates.com
K&L GATES LLP
Four Embarcadero, Suite 1200
San Francisco, California 94111
(415) 882-8200
(415) 882-8220 facsimile

Steven G Schortgen
steven.schortgen@klgates.com
Jennifer Klein Ayers
jennifer.ayers@klgates.com
K&L GATES LLP
1717 Main Street, Suite 2800
Dallas, Texas 75201
(214) 939-5500
(214) 939-5849 facsimile

Attorneys for Defendants HTC Corporation and HTC America, Inc.

via E-mail and also via pre-paid Federal Express overnight delivery to the lead counsel indicated above.

Additionally, a copy will be sent to these U.S. District Judges:

The Honorable Rodney Gilstrap
U.S. District Court, District Judge
Sam B. Hall, Jr. Federal Building
and United States Courthouse
100 East Houston Street
Marshall, Texas 75670
Tel: (903) 935-3868
Fax: (903) 935-2295

via pre-paid Federal Express overnight delivery.

Unless otherwise noted, 4 copies and a pdf copy on disk, along with the required filing fee, have been sent via pre-paid Federal Express overnight delivery to the Court on the same date as above.

August 21, 2014

Lindsay C. Cloonan
Counsel Press